1 | Bruce D. Praet, SBN 119430
  | FERGUSON, PRAET & SHERMAN
2 | A Professional Corporation
  | 1631 East 18th Street
3 | Santa Ana, California 92705
  | (714) 953-5300 telephone
4 | (714) 953-1143 facsimile
  | bpraet@law4cops.com
5 |
6 | Attorneys for Defendants, CITY OF FRESNO and JERRY DYER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVETTE SANDERS, individually and as guardian ad litem for the estate of MICHAEL L. SANDERS | Case No. 1:05-CV-00469-AWI (SMS) |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | [**F.R.Civ.P., Rule 12b(6)**] |
| CITY OF FRESNO, a municipality, COUNTY OF FRESNO; TASER INTERNATIONAL, INC., a corporation doing business in Califomia; JERRY DYER, an individual; and DOES 1 through 10, inclusive. | **DATE:** March 13, 2006<br>**TIME:** 1:30 p.m.<br>**CTRM:** 3 |
| Defendants. | |

TO: PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants, City of Fresno and Jerry Dyer, will and do move the Court for an order dismissing the Fifth and Eleventh causes of action from Plaintiff's Second Amended Complaint in this action with prejudice pursuant to F.R.Civ.P., Rule12b(6). The hearing on said motion will take place on March 13, 2006, at 1:30 p.m., in Courtroom 3 of the above-entitled court located at 1130 "O" Street, Fresno, California, 93721.

///

///

///

1

This motion is based upon all of the pleadings and records in this file in conjunction with any oral argument made at time of hearing. The basis of such motion is that:

1. The Fifth and Eleventh causes of action in Plaintiff's First Amended Complaint fail to state a claim against any of these Defendants.

Dated: January 25, 2006

FERGUSON, PRAET & SHERMAN
A Professional Corporation

By: /s/Bruce D. Praet
Bruce D. Praet, Attorneys for Defendants
City of Fresno and Jerry Dyer

# MEMORANDUM OF POINTS & AUTHORITIES

## 1. PREFATORY STATEMENT.

Quite candidly, Defendants were somewhat surprised to recently read that they had not filed a reply brief to Plaintiff's apparent opposition to the last 12b(6) and that Defendants had not addressed the proposed second amended complaint. [See: Order of January 11, 2006]. While Plaintiff's opposition, recently located in the Court's docket, clearly reflects a proof of service on these Defendants, this Court's Order of January 11, 2006, was literally the first time Defendants became aware of such an opposition or any proposed second amended complaint. Although the mystery of never having received Plaintiff's prior opposition or the proposed second amended complaint may never be solved, Defendants certainly would have filed a timely reply and addressed the proposed second amended complaint if it had been received prior to this Court's latest Order. That aside, Defendants will now address the recently filed second amended complaint and the ongoing and even recently added flaws contained therein.

At this point, it should become clear that Plaintiff will not be able to cure the fatal flaws in the Fifth and Eleventh causes of action and both should be dismissed with prejudice so that this litigation may proceed on all remaining claims.

## 2. PLAINTIFF'S LATEST ADDITION OF COMPLETELY NEW THEORIES OF LIABILITY CONTAINED IN THE FIFTH CAUSE OF ACTION ARE UNTIMELY AND MUST BE DISMISSED.

Having now twice been "educated" by Defendants' prior 12b(6) motions, Plaintiff has attempted to cure the fatal flaws of the Fifth Cause of Action for negligence by now adding a myriad of never before alleged theories of duty. While this Court graciously allowed Plaintiff's original Fifth Cause of Action for general negligence to survive a previous attack for failing to set forth the basis for such claims in the original tort claim, this Court also commented that "Defendant's frustration with Plaintiff's Notice of Claim is understandable as the notice is certainly minimal". [See: Order of September 30, 2005, pg. 8:11-12].

Although the separate fatal flaw of Plaintiff's Fifth Cause of Action stemming from the lack of statutory duty will be separately addressed below, this Court previously allowed a

negligence claim to survive because the alleged negligence seemingly arose out of the same facts, circumstances and occurred contemporaneously with the August 20, 2004, death of Plaintiff's decedent. [See: Order of September 30, 2005, pg. 6, relying on Stockett v. Assoc. of JPIA, 34 Cal.4th 441, 447 (2004)]. Arguably, Plaintiff's original Notice of Claim might have provided Defendants with skeletal notice of allegations arising from the events of August 20, 2004.

However, in their latest attempt to salvage the twice dismissed Fifth Cause of Action, Plaintiff has now added completely new "duty" theories never before even remotely inferable from the initial Notice of Claim and seemingly arising at times long before the August 20, 2004, incident involving Defendants and Plaintiff's decedent.[1] For example, Plaintiff now alleges in the second amended complaint that Defendants "owed a duty of care. . . and breached that duty by selecting, procuring, and deploying of weaponry". [See: SAC, ¶'s 30-31] Plaintiff further now alleges that Defendants "owed a duty. . . and breached that duty to use reasonable care in hiring, training, supervising and retention of persons within their chain of command. . .". [See: SAC, ¶ 32a]. Finally, Plaintiff has added brand new allegations that Defendants purportedly had some sort of duty to and breached a duty to "reasonably investigate claims of discrimination or harassment. . ." [See: SAC, ¶ 32(b).

First and foremost, it is obvious from these latest allegations that the acts giving rise to these new theories could not have occurred on August 20, 2004, the only date set forth in the Notice of Claim. It is not, nor could it be, alleged that Defendants, City of Fresno or Chief Jerry Dyer, selected or procured weaponry on the date of Decedent's death nor could Defendants have "hired, trained, etc." or "investigated claims of discrimination or harassment" on the date of Decedent's death. Because these events necessarily took place prior to the date alleged in the Notice of Claim, they must first be dismissed for Plaintiff's failure to file a timely claim within six months of the alleged conduct. California Government Code § 911.2. As this Court has previously noted, the mandatory provisions of Government Code § 910(c) require that any claim

---

[1] The Notice of Claim has previously been judicially noticed as a part of Defendants' original 12b(6) motion and was set forth in its entirety in this Court's Order of Sept. 30, 2005.

minimally include the "date. . ." of the circumstances giving rise to the claim asserted.  Since the Notice of Claim makes reference to only August 20, 2004, any claim or theory involving conduct occurring prior to that date is not only fatally untimely, but was not included in the operative Notice of Claim.

As this Court correctly pointed out in it's Order of September 30, 2005, the California Supreme Court recently permitted some leeway in expanding causes of action not specifically set forth in the original Notice of Claim.  <u>Stockett</u>, *supra.*  However, as this Court also recognized, the California Supreme Court was <u>not</u> willing to allow expansion of claims when the new premise or theory involved "acts or omissions committed at different times".  34 Cal.4th at 447.  Because virtually all of Plaintiff's varied theories of "negligence" set forth in the Fifth Cause of Action clearly stem from "acts or omissions committed at different times" than the single August 20, 2004, date set forth in the Notice of Claim, they are untimely and must be dismissed with prejudice.  <u>State of Calif. v. Sup. Ct. (Bodde)</u>, 32 Cal.4th 1234, 1240 (2004).

### 3. PLAINTIFF'S NEW THEORIES OF NEGLIGENCE IN THE FIFTH CAUSE OF ACTION MUST BE DISMISSED.

As previously noted, Plaintiff has added several new paragraphs in the Fifth Cause of Action in the SAC.  Unfortunately, these new theories of "negligence" presumably designed to avoid the fatal "duty" flaw were not set forth in the otherwise timely Notice of Claim and must therefore be dismissed.

For example, while the latest version of the Fifth Cause of Action contains several references to some sort of "duty" to "use reasonable care in the hiring, training, supervising and retention of persons. . ." [See: ¶32(a) of SAC], the Notice of Claim contains nothing even remotely suggesting such a theory of negligence.  Not having to address this issue in its Order of September 30, 2005, this Court again relied on <u>Stockett</u> for the proposition that theories reasonably set forth in the Notice of Claim may survive if slightly expanded in the complaint.  While the California Supreme Court was able to distinguish earlier cases under the facts of <u>Stockett</u> because all theories arose out of the termination of employment,  it is actually those cases which are virtually indistinguishable from the instant case and which warrant dismissal of

all theories of negligence set forth in the Fifth Cause of Action.

For example, in <u>Fall River v. Superior Court</u>, 206 Cal.App.3d 431 (1988), all claims arising out of the actual event in which plaintiff was injured by a steel door were permissible. However, identical to Plaintiff's claims of "negligent supervision" alleged here, claims that school officials had negligently failed to supervise school horseplay were <u>not</u> permitted to survive since the factual divergence between the (silent) claim and the complaint was simply too great. A review of Plaintiff's skeletal Notice of Claim reveals that, like <u>Fall River</u>, there is simply too great of a divergence to permit any sort of "negligent hiring, training, supervision or retention" theory to survive.

Similarly, Plaintiff's latest theory of "negligent investigation of claims of discrimination or harassment. . ." [See: ¶32(b) of SAC] is nowhere to be found even remotely referenced in the Notice of Claim. While the <u>Stockett</u> Court permitted theories clearly arising out of the same event (i.e. termination of employment) to survive, Plaintiff's latest new theories clearly involve allegations necessarily preceding the death of Plaintiff's decedent on August 20, 2004, and are of the same nature as those impermissible theories disallowed in <u>Lopez v. So. Cal. Medical Group</u>, 115 Cal.App.3d 673, 676-677 (1981) [claim alleging negligent issuance of driver's license did not permit cause of action for neglecting to suspend or revoke a driver's license] and <u>Donahue v. State of Calif.</u>, 178 Cal.App.3d 795, 803-804 (1986) [negligent supervision and instruction of driver candidate not permitted when claim alleged negligently allowing uninsured motorist to take a driver's test].

While Plaintiff has certainly expanded the allegations set forth in the Fifth Cause of Action in the SAC, these additions far exceed any theories even remotely set forth in the minimal Notice of Claim and they must therefore be dismissed with prejudice.

4. **PLAINTIFF'S REMOVAL OF THE CITY FROM THE FIFTH CAUSE OF ACTION DOES NOT CURE THE FATAL FLAW.**

While Plaintiff's latest removal of the City of Fresno from the Fifth Cause of Action as a direct Defendant was certainly required, none of the various theories of "negligence" may survive against Chief Dyer or vicariously against the City of Fresno.

Because of the unfortunate mystery surrounding Defendants' recent failure to file any Reply to Plaintiff's opposition to the last 12b(6) motion, it is understood why the Court found the "City's argument not entirely clear" regarding the inability to name Chief Dyer as a Defendant owing some sort of non-statutory duty to Plaintiff. [See: Order of January 13, 2006, p. 8:23]. Therefore, Defendants will take this opportunity to explain further. Just as the Court in <u>Munoz v. City of Union City</u>, 120 Cal.App.4th 1077, 1113 (2004) did not permit direct or vicarious liability for negligence to survive with respect to named Defendant, Union City Police Chief Al Guzman, Plaintiff may not attempt to circumvent the inability to allege negligence against the City of Fresno through Police Chief Dyer. The virtually identical theories of "negligent supervision, hiring, etc." alleged in <u>Munoz</u> were disallowed as against the City and the Police Chief since such theories are simply not set forth in any requisite statute. As the Court in <u>Munoz</u> noted and relying on the California Supreme Court's ruling in <u>Eastburn v. Regional Fire Prot. Auth.</u>, 31 Cal.4th 1175, 1183 (2003):

> "Additionally, while respondents are correct insofar as they state public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability. For example, in *Eastburn* as well as in *Ma*, the alleged negligent staffing, training, and promulgation of guidelines for the 911 services at issue were obviously performed by employees of the public entities sued. However, the Supreme Court clearly did not adopt the view that because all entities, public and private, must act through individuals, that suffices to establish *direct liability.* Indeed, the legal distinction between direct and vicarious liability was the whole point and purpose of the *Eastburn* decision. To accept respondents' argument would render the distinction between direct and vicarious liability completely illusory in all cases except where the employer is an individual." <u>Munoz</u>, *supra.,* pg. 1113.

As noted in the last 12b(6) motion, attempting to simply add Chief Dyer as an individual Defendant in an attempt to avoid the clear prohibition of alleging negligence against a public entity is not permissible since it is virtually the same as attempting to impermissibly set forth the same claims against the City of Fresno because the City necessarily acts through its Police Chief.

7

1   While this Court identified a few cases which seemingly permitted causes of action for
2   "negligent supervision" to survive in the past, each is easily and clearly distinguishable. [See:
3   Order, p. 9]  First, both Fernelius v. Pierce, 22 Cal.2d 226 (1943) and Michel v. Smith, 188 Cal.
4   199 (1922) not only preceded the California Supreme Court's 2003 ruling in Eastburn to the
5   contrary, both cases actually predated even the Tort Claims Act of 1963.  Government Code §
6   910, et. seq.  Although White v. State of Calif., 17 Cal.App. 3d 621 (1971) was at least decided
7   under the Tort Claims Act, it too preceded Eastburn and this Court's reference to page 636 in
8   White is little more than dicta in the dissenting opinion.  Finally, this Court's reference to Baker
9   v. California, 2005 U.S. Dist. LEXIS 34669 (E.D. Cal. 2005) offers little support since that court
10  never addressed the threshold "duty" issue presented here, nor did it mention or discuss the
11  controlling law of Eastburn and Munoz.  Thus, while Baker makes some passing reference to
12  "supervising officers", such reference cannot be considered a statement of California law simply
13  because the issue of "duty" was never raised by the parties.
14      A quick review of the "amended" Fifth and Eleventh (previously Tenth) causes of action
15  for "Negligence" and "Negligent Hiring, Training and Supervision" reveals that Plaintiff has
16  done little more than add "Defendant DYER" and language to the effect that "CITY and
17  COUNTY are vicariously liable. . .".  While these facial amendments may create the illusion that
18  Plaintiff has somehow sufficiently stated claims, Plaintiff has missed the point made by the
19  California Supreme Court in Eastburn v. Regional Fire Prot. Auth. (2003) 31 Cal.4th 1175, 1183
20  and this Court in its ruling on Defendants' original 12b(6) motion.
21      Obviously, the City of Fresno is not an individual and Plaintiff's allegations of
22  "negligence" set forth in the Fifth Cause of Action have now simply been "amended" to
23  purportedly add Police Chief Dyer as a direct Defendant where such claims had previously been
24  alleged directly against the City.  Unfortunately, such is not sufficient to convert a claim of
25  vicarious liability into one of alleged direct liability against the Chief.  Nor may the City be a
26  "vicarious" Defendant in impermissible claims of negligence absent some identified permissible
27  individual defendant.  Munoz, *supra.*, p. 1113-1114.
28  ///

Although Plaintiff might some day discover some factual basis to assert some sort of negligence claim against some identified individual other than the Police Chief, such has not been set forth in the Second Amended Complaint. As such, the Fifth Cause of Action may not survive as against Chief Dyer as a direct Defendant or vicariously against the City.

### 5. THE ELEVENTH CAUSE OF ACTION MAY NOT SURVIVE.

While Defendants will concede that the City may be vicariously liable for acts of individuals within the course and scope of their employment, the Eleventh Cause of Action continues to be couched in terms of vicarious liability for "negligence". Given that no cause of action for "negligence" set forth in the Fifth Cause of Action may currently survive (e.g. "negligent hiring, training and supervision", etc.) the Eleventh Cause of Action will always revert back to the City regardless of the individual through which the City necessarily acted and it must be dismissed with prejudice.

### 6. CONCLUSION.

Defendants certainly recognize that Plaintiff will eventually be permitted to move forward with at least some cause(s) of action. However, at present, Defendants respectfully ask that this Court once again dismiss the Fifth and Eleventh causes of action with prejudice as currently alleged. If, at some later time, Plaintiff is somehow able to properly assert some sort of negligence claim(s) against some other individual, Plaintiff may thereafter seek leave to amend the complaint in that regard. For now, however, it is time to move forward with this litigation as limited by the terms of this motion.

Dated: January 25, 2006        FERGUSON, PRAET & SHERMAN
                               A Professional Corporation


                               By:    /s/Bruce D. Praet
                                  Bruce D. Praet, Attorneys for
                                  Defendants, City of Fresno and Jerry Dyer

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Cathy Sherman, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action. My business address is 1631 East 18th Street, Santa Ana, California 92705-7101.

On January 27, 2006, I served the foregoing **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Waukeen Q. McCoy, Esq.
LAW OFFICES OF WAUKEEN McCOY
703 Market Street, Ste. 1407
San Francisco, CA 94111

Bruce B. Johnson, Esq.
FRESNO COUNTY COUNSEL
2220 Tulare Street, Fifth Floor
Fresno, CA 93721

Mildred K. O'Linn, Esq.
MANNING & MARDER
23rd Floor @ Figueroa Tower
660 S. Figueroa Street
Los Angeles, CA 90017

___ (By Mail) I placed such envelope for deposit in accordance with office practice, sealed, with postage thereon fully paid and the correspondence to be deposited in the United States mail at Santa Ana, California on the same day.

XXX (By e-filing) The above noted individuals are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

XXX (Federal) I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 27, 2006, at Santa Ana, California.

                                             /s/Cathy Sherman
                                             Cathy Sherman