Mildred K. O'Linn
State Bar No. 159055
MANNING & MARDER
KASS, ELLROD, RAMIREZ
23rd Floor at Figueroa Tower
660 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 624-6900
Facsimile (213) 624-6999
E-Mail: mko@mmker.com

Attorneys for Defendant,
TASER™ INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVETTE SANDERS, individually and as guardian ad litem for the estate of MICHAEL L. SANDERS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF FRESNO, a municipality; COUNTY OF FRESNO, a municipality; TASER INTERNATIONAL, INC., a corporation doing business in California; JERRY DYER, an individual; and Does 1-10, inclusive,<br><br>Defendants. | Case No.:<br>05-CV-00469 AWI(SMS)<br><br>DEFENDANT TASER™ INTERNATIONAL, INC.'s NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[FRCP 12(b)(6)]<br><br>Date: March 13, 2006<br>Time: 1:30 p.m.<br>Room: "3" |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 13, 2006, in Courtroom "3", at 1:30 p.m., or as soon thereafter as the matter may be heard, in the above-captioned court, located at 1130 "O" Street, Fresno, California, 93721, TASER™ INTERNATIONAL, INC. ("TASER™") will move to dismiss plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

The Second Amended Complaint fails to state a claim against Defendant TASER™ on the following grounds:

-1-

1. Plaintiff's first claim for wrongful death fails to allege facts sufficient to state a valid claim for relief because TASER™ did not owe a duty of care to plaintiff's husband, and TASER™ does not manufacture an inherently dangerous product.

2. Plaintiff's sixth claim for strict products liability, seventh claim for breach of express warranty, eighth claim for breach of implied warranty of fitness, and ninth claim for manufacturer's negligent misrepresentation fail to allege facts sufficient to state a valid claim for relief because TASER™ does not manufacture an inherently dangerous product, plaintiff's husband had no contractual relationship with TASER™, and TASER™ did not have any communication with plaintiff's husband which would give rise to an express warranty.

This Motion To Dismiss is based on this Notice of Motion, the attached Memorandum of Points and Authorities, and on such other and further matters as the Court may accept at the hearing on this motion.

Dated: January 26, 2006

MANNING & MARDER
KASS, ELLROD, RAMIREZ LLP

By: /s/ Mildred K. O'Linn
Mildred K. O'Linn
Attorneys for Defendant
TASER™ INTERNATIONAL, INC.

# TABLE OF CONTENTS

*Page*

1. INTRODUCTION. ............................................................ 3
2. RELEVANT ALLEGATIONS OF COMPLAINT.. ............................ 4
3. PLAINTIFF CANNOT STATE A CLAIM FOR WRONGFUL DEATH BECAUSE TASER™ DID NOT OWE A DUTY TO PLAINTIFF'S HUSBAND.. ................................................................. 5

    a. No Duty Under *Rowland v. Christian*.. ............................ 5

        1. Foreseeability of Harm.. ................................... 6
        2. Closeness of Connection... ............................... 6
        3. Moral Blame... ............................................. 7
        4. Policy of Preventing Future Harm. .. ..................... 7
        5. Burden to Defendant and Impact on Community. .. ... 7

    b. Public Policy Mandates Against Imposition of Duty.. .. ............. 8

4. PLAINTIFF CANNOT STATE A STRICT LIABILITY OR BREACH OF WARRANTY CLAIM BECAUSE TASER™ DOES NOT MANUFACTURE AN INHERENTLY DANGEROUS PRODUCT AND PLAINTIFF LACKS PRIVITY OF CONTRACT WITH TASER™ ...... 10

    a. The Manufacture and Sale of the TASER™ ECD is Not An Abnormally Dangerous Activity... .. ............................ 10

    b. No Claim for Express or Implied Warranty ... ..................... 12

5. PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO SHOW CAUSATION ............................................................ 13

5. CONCLUSION .. ............................................................ 14

# TABLE OF AUTHORITIES

*Adkinson v. Rossi Arms Co.*, 659 P.2d 1236 (Alaska 1983) .................. 8,9

*Bojorquez v. House of Toys*, 62 Cal. App. 3d 930 (1976) ..................... 8

*Carlin v. Superior Court*, 13 Cal.4th 1104 (1996) ........................ 8, 13

*Delahanty v. Hinckley*, 564 A.2d 758 (D.C. Cir. 1989) ....................... 11

*Huber v. Peek-A-Boot, Inc.*, 189 Cal.App. 2d 512 (1961) ...................... 9

*Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333 (1985) ............ 11

*Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200 (7th Cir. 1984) ....... 12

*Moore v. R.G. Indus.*, 789 F.2d 1326 (9th Cir. 1986) .................. 4, 8, 11

*Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999) ............................... 5

*Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir. 1985) ...................... 12

*Peter W. v. San Francisco Unified School District* 60 Cal App.3d 814 (1976) .... 9

*Reida v. Lund*, 18 Cal. App. 3d 698, 704 (1971) .......................... 4, 11

*Rowland v. Christian*, 69 Cal.2d 108 (1968) ..................... 3, 5, 6, 9,10

*Setliff v. E. I. Du Pont de Nemours & Co.*, 32 Cal.App.4th 1525 (1995) ........ 13

*Shipman v. Jennings Firearms*, 791 F.2d 1532 (11th Cir. 1986) ............... 11

*U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431 (1991) ... 4, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION.

Plaintiff Lavette Sanders brings this action based on the death of her husband, Michael L. Sanders (hereafter "plaintiff's husband" or "Michael L. Sanders"), who died in an incident involving City of Fresno police officers. Plaintiff alleges that the police officers' use of a TASER™ Electronic Control Device (hereafter "TASER™ ECD") contributed to her husband's death.

Plaintiff attempts to recover against TASER under theories of products liability - strict liability and breach of warranty. However, plaintiff's husband was not the buyer of the product, or even an end user. Instead, as alleged in the Second Amended Complaint, Fresno police officers used the TASER™ ECD on Michael L. Sanders after responding to a call made at his home, where he appeared unclothed and disoriented. Plaintiff has made no allegation that TASER™ was at the scene or sold the TASER™ ECD to Michael L. Sanders. Plaintiff has not alleged, and as a matter of law cannot show, that TASER™ owed her husband any duty. *Rowland v. Christian* (1968) 69 Cal.2d 108, 113.

Based on the *Rowland v. Christian* factors, the unforeseeability of plaintiff's injuries, the lack of closeness of connection between the conduct of TASER™ and the injuries sustained by the plaintiff, the lack of control TASER™ has over the actions taken by law enforcement towards any particular plaintiff, the lack of "moral blame" attaching to TASER™ compared to the plaintiff who is engaging in intentional criminal conduct or disruptive behavior, and the public policy considerations dictating against compensating plaintiff or their families for the consequences of intentional criminal conduct, the imposition of a duty on TASER™ to protect third parties who are injured by the use of the product on them by law enforcement should be rejected. Without such a duty, plaintiff cannot state a claim for wrongful death.

In addition, plaintiff's claims based on a breach of warranty theory of liability fail to allege facts sufficient to state a valid claim for relief because plaintiff's husband had

-3-

no contractual relationship with TASER™, which is required for a claim for breach of an implied warranty claim. Nor did TASER™ have any communication with plaintiff's husband which would give rise to an express warranty. Vertical privity of contract between the consumer and the defendant is required to state a cause of action for implied warranty. *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1441 (1991).

Nor can plaintiff recover in strict liability based on a theory that TASER™ manufactures an inherently dangerous product. In analogous cases, the use of firearms was found not to fall within the category of ultra-hazardous activity which could result in the imposition of absolute liability. *Reida v. Lund*, 18 Cal. App. 3d 698, 704 (1971). If the use of firearms does not fall within the category of ultra-hazardous activity, then the TASER™ ECD, which is non-lethal, cannot be considered an ultra-hazardous activity. Because the actual use of the TASER™ ECD is not "ultra-hazardous" under California law, it follows that the manufacture, marketing, and sale of the TASER™ ECD cannot be ultra-hazardous either. *See Moore v. R.G. Indus.*, 789 F.2d 1326, 1328 (9th Cir. 1986) (finding that strict liability claim against handgun manufacturer fails as a matter of law because manufacture of handguns is not ultra-hazardous activity, as harm comes from use, not mere existence, of handguns).

Since plaintiff cannot state causes of action against TASER™ based on strict liability and breach of warranty, the Court should dismiss plaintiff's first, sixth, seventh, eighth and ninth claims pursuant to FRCP 12(b)(6).

### 2. RELEVANT ALLEGATIONS OF COMPLAINT.

Plaintiff alleges that on August 20, 2004, Fresno police responded to a call made at plaintiff's home, where Michael L. Sanders appeared unclothed and disoriented. (SAC, ¶¶10-12.) Plaintiff alleges that the Fresno police officers fired numerous TASER™ ECD darts into Michael L. Sanders' naked body. (SAC, ¶¶11,12.) Plaintiff alleges that the officers "handcuffed him, placed him face down on a gurney, suffocating

-4-

him and placed him in an ambulance." (*Ibid.*) Subsequently, after the officers attempted cardiopulmonary resuscitation, plaintiff's husband was pronounced dead. (*Ibid.*) Plaintiff does not allege that TASER™ was at the scene or that TASER™ sold the TASER™ ECD to Michael L. Sanders.

Plaintiff alleges that the TASER™ ECD cannot be safely used for the purposes for which it was intended, and that law enforcement agencies relied on TASER™'s representations about the safety of its product. (SAC, ¶¶51, 54-55, 58-60, 65-67.)

### 3. **PLAINTIFF CANNOT STATE A CLAIM FOR WRONGFUL DEATH BECAUSE TASER™ DID NOT OWE A DUTY TO PLAINTIFF'S HUSBAND.**

#### a. **No Duty Under *Rowland v. Christian*.**

In order to state a claim for wrongful death, plaintiff must prove the "wrongful act or neglect" on the part of one or more persons caused the death of another person. Code of Civil Procedure section 377.60; *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 390 (1999). To show negligence on the part of TASER™, plaintiff must allege facts showing the existence of a duty owed by TASER™ to Michael L. Sanders. Whether a duty is owed to plaintiff is a question of law for the Court to decide. In cases such as this, in which there is no contractual privity, the courts have used the following *Rowland v. Christian* factors in determining whether an actionable duty of care exists in a particular case:

> "'The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."'

-5-

*Rowland v. Christian,* 69 Cal.2d 108, 113 (1968).

Applying the *Rowland v. Christian* factors to this case, the Court should find as a matter of law that there is no duty running from TASER™ to Michael L. Sanders that would support any of plaintiff's claims as alleged in the Second Amended Complaint.

### i. Foreseeability of Harm.

Under the first factor, Michael L. Sanders's asserted injuries were not readily foreseeable. Michael L. Sanders was not the buyer or end user of the TASER™ product. Plaintiff does not allege that TASER™ sold the product to Michael L. Sanders. Rather, plaintiff alleges that TASER™ sold the product to various law enforcement agencies such as the Fresno Police Department. (SAC, ¶¶67-68.) There is no indication that any alleged sales transaction between TASER™ and the law enforcement agencies named in the Complaint was intended to benefit persons such as plaintiff's husband. To the contrary, the TASER™ ECDs are designed specifically to protect the safety of police officers performing their official duties in arresting unpredictable and potentially violent criminal suspects. In addition, plaintiff has failed to allege sufficient facts showing causation, i.e., that Michael L. Sanders' death was caused by a defect in the TASER product. Any conceivable connection between an alleged defect in the TASER™ ECD and Michael L. Sanders's death must be considered remote, and obliterated by the independent, intervening police restraint procedures and actions of the law enforcement agencies and Michael L. Sanders' own disoriented behavior.

Even if the Court were to find Michael L. Sanders' injuries foreseeable, foreseeability is not the sole determinant of the existence of a duty. The remaining four factors weigh strongly against the imposition of a duty.

### ii. Closeness of Connection.

Under the second factor, there is little "closeness of connection" between the conduct of TASER™ and the death of plaintiff's husband. Although TASER™ trains law enforcement in the use of the TASER™ ECD, TASER™ has no control over the actions taken by law enforcement towards any particular plaintiff. Michael L. Sanders'

fatal injuries arise directly out of independent conduct not controlled by TASER™: the conduct engaged in by Michael L. Sanders, and the actions taken by law enforcement. The connection between TASER™ and the death of Michael L. Sanders is tenuous at best. No representative of TASER™ was at the scene, and there is no indication that the TASER™ ECD did anything other than what it was designed to do with proper use. The police officers, not TASER™, determined the need to use the weapon on plaintiff's husband, as well as the amount of exposure to apply.

### iii. Moral Blame.

Third, any "moral blame" attaching to TASER™ is of a significantly lesser degree than that which society assigns to a party who is engaging in disruptive behavior. TASER™ products have been used to save lives, rescue hostages, save suicides, and reduce injuries to police officers. When a comparison is made with a plaintiff who is who is engaging in disruptive behavior, the moral scale tips in favor of TASER™. Any alleged failure by TASER™ to protect such persons from harm is far outweighed by the benefit to law enforcement and the public.

### iv. Policy of Preventing Future Harm.

Fourth, the policy of preventing future harm is not advanced by imposing a duty on TASER™. Public policy supports the use of the TASER™ ECD at the discretion of law enforcement officers. The TASER™ ECD is designed to assist police in restraining criminal suspects when necessary without the use of a gun. Without such a tool, officers would be faced with the choice of firing bullets at a potentially dangerous offender or allowing his escape. If forced to choose between the risk to a criminal suspect and the safety of law enforcement officers and the public, public policy supports the use of TASER™.

### v. Burden to Defendant and Impact on Community.

Fifth, analysis and application of "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach" militates against a holding that the plaintiff has a claim for personal

-7-

damages against TASER™. Imposition of such a duty would have detrimental consequences for society as a whole by choosing to protect the risk to a criminal suspect over the safety of law enforcement officers. Finding that TASER™ owes such a duty would have the effect of compensating plaintiff or their families for the consequences of intentional criminal conduct, ultimately transferring the costs involved to the public.

### b. **Public Policy Mandates Against Imposition of Duty.**

Public policy considerations mandate that the imposition of a duty on TASER™ be rejected. The goals of general deterrence as well as individual deterrence would be undercut. It would be unfair to impose strict liability on TASER™, thereby making TASER™ the life insurer of everyone who fights with law enforcement. Strict liability "was never intended to make the manufacturer or distributor of a product its insurer." *Carlin v. Superior Court*, 13 Cal.4th 1104, 1110 (1996).

In general, California law does not impose a duty on manufacturers to insure against third party misuse of their nondefective products. *See, e.g., Bojorquez v. House of Toys*, 62 Cal. App. 3d 930, 933 (1976) (rejecting negligence claim against distributor and seller of slingshot that was misused to cause injury); *Moore v. R.G. Indus.*, 789 F.2d 1326 (9th Cir. 1986) (holding firearm manufacturer not liable under product liability law for injuries caused by third party's criminal misuse of nondefective firearm).

In analogous situations, the courts have found gun manufacturers did not have a duty to protect victims of a shooting by a third-party criminal. In *Adkinson v. Rossi Arms Co.*, 659 P.2d 1236 (Alaska 1983), the Alaska Supreme Court adopted California's negligence standard in finding that the plaintiff--the owner of a shotgun who was convicted of manslaughter arising out of an altercation, and the parents of the victim of the manslaughter--could not sustain an action in negligence and warranty against the manufacturer and seller of a defective shotgun.

In *Adkinson*, plaintiff alleged that the shooting of the decedent was due to a defect in the shotgun which caused it to discharge accidentally, and that the third party defendants were therefore liable for his death. *Id.* at 1237. The *Adkinson* court held that

neither defendant had any duty to protect the plaintiff or the victim's family from the consequences of the plaintiff's own intentional criminal conduct, and summary judgment for the defendants was therefore proper. *Id.* at 1241. In finding no duty, *Adkinson* relied on a California case, *Peter W. v. San Francisco Unified School District* 60 Cal App.3d 814 (1976), and the *Rowland v. Christian* factors. After applying the *Rowland v. Christian* factors, Adkinson concluded that "Application of these criteria, as well as considerations of public policy, lead us to conclude that neither Rossi nor Mountain View owed a legal duty to the Adkinsons to protect them from James Adkinson's intentional criminal conduct." *Id.* at 1239.

> "Imposition of such a duty would in our view have detrimental consequences for society as a whole. Here, considerations of public policy mandate that the Adkinsons' arguments for imposition of a duty be rejected. **Finding that the appellees owed a duty to the Adkinsons would tend to denigrate James Adkinson's personal responsibility for his criminal conduct** and would have the effect of compensating James Adkinson for the consequences of an intentional homicide, ultimately transferring the costs involved to the public." *Id.* at 1239-1240 (emphasis added).

*Adkinson* concluded that in light of strong public policy considerations, "one convicted of an intentional killing does not have a claim for relief against either the manufacturer of the firearm used in the killing, or the distributor of the firearm, for direct personal losses." *Id.* at 1240.

By analogy, in this case, public policy considerations mandate against the imposition of a duty on TASER™ to protect plaintiff from her husband's conduct in struggling with the police when they responded to the call and found him unclothed and disoriented. The theory that one cannot recover on a cause of action for injuries based upon his own illegal acts is well established. *See Huber v. Peek-A-Boot, Inc.*, 189 Cal.App. 2d 512, 515 (1961)("No court will lend assistance to one who founds his cause

-9-

of action upon an illegal act . . . when it appears that the very party who is seeking aid from the court participated in the unlawful purpose.").

The conclusion that TASER™ does not owe a duty to criminals who are injured by law enforcement's use of their product is even stronger when the TASER™ ECD is being used in a lawful manner by law enforcement rather than an unlawful manner by a third party criminal. If no duty exists to protect the victim from a third party's use of a gun, then there can be no duty to protect the one who is committing the crime. Imposing a duty on TASER™ to protect the criminal would allow the criminal to profit from his own criminal behavior.

Based on the *Rowland v. Christian* factors, the unforeseeability of plaintiff's injuries, the lack of closeness of connection between the conduct of TASER™ and the injuries sustained by the plaintiff, the lack of control TASER™ has over the actions taken by law enforcement towards any particular plaintiff, the lack of "moral blame" attaching to TASER™ compared to the plaintiff who is engaging in intentional criminal conduct or disruptive behavior, and the public policy considerations dictating against compensating plaintiff or their families for the consequences of intentional criminal conduct, the imposition of a duty on TASER™ to protect third parties who are injured by the use of the product on them by law enforcement should be rejected. Without such a duty, plaintiff cannot state a claim for wrongful death against TASER™.

4. **PLAINTIFF CANNOT STATE A STRICT LIABILITY OR BREACH OF WARRANTY CLAIM BECAUSE TASER™ DOES NOT MANUFACTURE AN INHERENTLY DANGEROUS PRODUCT AND PLAINTIFF LACKS PRIVITY OF CONTRACT WITH TASER™.**

   a. **The Manufacture and Sale of TASER™ is Not An Abnormally Dangerous Activity.**

Plaintiff's sixth claim for strict products liability, seventh claim for breach of

G:\docsdata\MKO\Sanders\Pleadings\mtd.sac

express warranty, eighth claim for breach of implied warranty of fitness, and ninth claim for manufacturer's negligent misrepresentation fail to allege facts sufficient to state a valid claim for relief because TASER™ does not manufacture an inherently dangerous product, plaintiff's husband had no contractual relationship with TASER™, and TASER™ did not have any communication with plaintiff's husband which would give rise to an express warranty.

Since plaintiff's husband was not the "end user" of the TASER™ ECD, TASER™ owed no duty to warn plaintiff's husband of the alleged risks or dangers of its product. Even if such a duty to warn plaintiff's husband existed, the TASER™ ECD is not an inherently dangerous product as a matter of law. California law defines an activity as "ultra-hazardous" only if (1) it involves a risk of serious harm to a person that cannot be eliminated by exercise of utmost care, and (2) it is not a matter of common usage. *Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333, 345 (1985). For example, the "use of firearms does not fall within the category of ultra-hazardous activity which may result in the imposition of absolute liability." *Reida v. Lund*, 18 Cal. App. 3d 698, 704 (1971). If the use of firearms does not fall within the category of ultra-hazardous activity, then the TASER™ ECD, which is non-lethal, cannot be considered an ultra-hazardous activity.

Because the actual use of the TASER™ ECD is not "ultra-hazardous" under California law, it follows that the manufacture, marketing, and sale of firearms cannot be ultra-hazardous either. *See Moore v. R.G. Indus.*, 789 F.2d 1326, 1328 (9th Cir. 1986) (finding that strict liability claim against handgun manufacturer fails as a matter of law because manufacture of handguns is not ultra-hazardous activity, as harm comes from use, not mere existence, of handguns).

Other jurisdictions have also refused to apply the "abnormally dangerous activity" doctrine to gun manufacture and sale. *See, e.g., Delahanty v. Hinckley*, 564 A.2d 758 (D.C. Cir. 1989) (holding that marketing and manufacturing of guns are not abnormally dangerous activities that directly cause injury, so strict liability inapplicable); *Shipman*

*v. Jennings Firearms*, 791 F.2d 1532, 1534 (11th Cir. 1986) (affirming summary judgment for gun manufacturer on strict liability claim because manufacture and sale are not ultra-hazardous or inherently dangerous activities); *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1266-69 (5th Cir. 1985) (finding that marketing of guns is not ultra-hazardous activity giving rise to strict liability of gun manufacturer, as danger from guns results from third-party actions); *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200, 1203-05 (7th Cir. 1984) (affirming dismissal of strict liability claim against handgun manufacturer for injuries caused by third party's criminal misuse of gun, because sale of guns is not ultra-hazardous activity).

Here, plaintiff cannot state a strict liability claim against TASER™ because plaintiff's allegation fail to establish that TASER™ manufactures an inherently dangerous product.

### b. No Claim for Express or Implied Warranty.

Plaintiff alleges that the law enforcement agencies relied on TASER™'s representations about the safety of the TASER™ ECD. (SAC, ¶¶54, 67.) Plaintiff's allegations fail to establish a claim for express or implied warranty against TASER™ because TASER™ had no contractual relationship with plaintiff or her husband. Both express and implied warranties arise only in circumstances supporting the existence of a contractual relationship. *See U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 1441 (1991) ("Vertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability.").

Here, there is no privity between plaintiff's husband and TASER™. Plaintiff alleges that TASER™ sold the product to various law enforcement agencies such as the Fresno Police Department. (SAC, ¶¶67-68.) Thus, the alleged sales transaction was between TASER™ and a third party. The Complaint does not contain a single allegation indicating that plaintiff's husband had contact or communications with TASER™ at any

time. Thus, there were no contractual dealings between plaintiff's husband and TASER™ which would give rise to an implied warranty.

Moreover, there are no allegations that TASER made any representations to plaintiff's husband regarding the safety of the product which could qualify as an express warranty. Additionally, since plaintiff's husband was not a party to the contract, TASER™'s statements were not part of the basis of any bargain into which he entered.

Accordingly, since plaintiff's husband was not the buyer or end user of the TASER™ ECD, and TASER™ does not manufacture an inherently dangerous product, the sixth claim for strict products liability, seventh claim for breach of express warranty, eighth claim for breach of implied warranty of fitness, and ninth claim for manufacturer's negligent misrepresentation should be dismissed.

### 5. PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO SHOW CAUSATION.

Regardless of theory, plaintiff must allege sufficient facts establishing that a defect in the TASER™ ECD was a proximate cause of her husband's death. *See Setliff v. E. I. Du Pont de Nemours & Co.*, 32 Cal.App.4th 1525, 1533 (1995) (proximate cause is a necessary element of actions for both negligence and strict products liability).

Plaintiff has not alleged sufficient facts which would indicate that the TASER™ ECD did anything other than what it was designed to do with proper use. The police officers, not TASER™, determined the need to use the weapon on plaintiff's husband as well as the amount of exposure to apply. To read plaintiff's allegations as creating strict liability would effectively make TASER™ the life insurer of everyone who resists or fights with the police. Strict liability was never intended to make the manufacturer of a product its insurer. *Carlin v. Superior Court, supra*, 13 Cal.4th at 1110.

///
///
///

G:\docsdata\MKO\Sanders\Pleadings\mtd.sac

## 6. **CONCLUSION.**

Based on the foregoing, Defendant TASER™ respectfully requests that the Court dismiss the first, sixth, seventh, eighth and ninth claims against TASER™.

Dated: January 26, 2006

MANNING & MARDER
KASS, ELLROD, RAMIREZ LLP

By: _____
Mildred K. O'Linn
Attorneys for Defendant
TASER™ INTERNATIONAL, INC.

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 660 S. Figueroa Street, 23rd Floor, Los Angeles, California 90017.

On January 30, 2006, I served the document described as **"DEFENDANT TASER™ INTERNATIONAL, INC.'s NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES"** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)** I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    I placed such envelope with postage thereon prepaid in the United States mail at Los Angeles, California.

    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY OVERNIGHT COURIER):** I placed the above-referenced document(s) in an envelope for collection and delivery on this date in accordance with standard _____ overnight delivery procedures.

☐ **(BY FACSIMILE)** I telecopied such document to the offices of the addressee at the following fax number: .

☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(FEDERAL)** I declare under penalty of perjury under the laws of the United States of America, that the above is true and correct.

Executed on January 30, 2006 at Los Angeles, California.

*/s/ Marvin Johnson*
MARVIN JOHNSON

Waukeen Q. McCoy, Esq.
LAW OFFICES OF WAUKEEN Q. MCCOY
703 Market Street, Ste. 1407
San Francisco, CA 94103
415-675-7705 phone
415-675-2530 fax
***Counsel for plaintiff Lavette Sanders***


Bruce Bradford Johnson, Jr.
Bruce B. Johnson, Senior Deputy
FRESNO COUNTY COUNSEL
2220 Tulare Street, Fifth Floor
Fresno, California 93721
(559) 488-3479 phone
(559) 488-1900 fax
***Co-defense for County of Fresno***


Bruce Daniel Praet
FERGUSON, PRAET & SHERMAN
1631 E.18th Street
Santa Ana, CA 92705-7101
714-953-5300 phone
714-953-1143 fax
***Co-defense Counsel for City of Fresno***