IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVETTE SANDERS, individually and as guardian ad litem for the estate of Michael Sanders,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF FRESNO a municipality; THE COUNTY OF FRESNO, a municipality; TASER INTERNATIONAL, Inc. a corporation doing business in California; JERRY DYER, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CIV F 05-0469 AWI SMS<br><br>ORDER ON DEFENDANTS THE CITY OF FRESNO AND JERRY DYER'S MOTION TO DISMISS AND DEFENDANT TASER'S MOTION TO DISMISS |

This is essentially a wrongful death case arising from a police encounter in the home of Michael and Lavette Sanders.  Michael Sanders ("Sanders") died and his widow Lavette Sanders ("Plaintiff") brought suit alleging in her Second Amended Complaint ("SAC") a violation of 42 U.S.C. § 1983 and various state law causes of action against the public entities and doe officers. Plaintiff also alleges products liability and warranty theories against Taser International ("Taser").  The City of Fresno ("the City")/Jerry Dyer ("Chief Dyer") and Taser bring two separate motions to dismiss.  For the reasons that follow, the motions to dismiss will be granted in part and denied in part.

**FACTS**[1]

Michael Sanders was a 40 year old man who resided in Fresno and made his living as a member of various music bands throughout Fresno. SAC at ¶ 9. Sanders graduated from Fresno State University in May 2004 and planned to teach music. Id. On August 20, 2004, Fresno police officers responded to a call made at the Sanders's home in southeast Fresno. Id. at ¶ 10. The police entered the premises and found Michael Sanders, who appeared disoriented, standing unclothed and behind his wife, Lavette Sanders. Id. The officers decided to subdue Michael Sanders by firing tasers at his naked body, although Fresno Police Department rules and other instructions require that tasers not come in contact with human skin. Id. at ¶ 11. The officers fired numerous taser darts into Michael Sanders's body. Id. at ¶ 12. The officers then handcuffed Sanders, placed him face down on a gurney, which suffocated him, and then placed him in an ambulance. Id. Sanders ultimately stopped breathing. Id. One of the officer attempted CRP, but Michael Sanders was pronounced dead at 4:30 a.m. Id.

Lavette Sanders, individually and as guardian ad litem for Michael's estate, filed suit in federal court against the City, the County of Fresno ("the County"), Fresno Police Chief Jerry Dyer, Doe Defendants, and Taser International. Plaintiff seeks damages under 42 U.S.C. § 1983, the California wrongful death statute, and state common law claims of Intentional Infliction of Emotional Distress, Negligence, Strict Products Liability, Breach of Express and Implied Warranties, Negligent Misrepresentation, False Imprisonment, and Negligent Hiring, Supervision, and Training.

The City now moves to dismiss two causes of action and argues that Plaintiff has not properly alleged negligence against the City in the Fifth and Eleventh causes of action because Plaintiff has added untimely claims to the Fifth cause of action, has failed to identify a specific statute that imposes a duty on the City, and has not identified a proper employee for vicarious

---

[1]Because this is a Rule 12(b)(6) motion to dismiss, the following facts are taken from Plaintiffs' complaint and are assumed to be true for purposes of resolving the motion. See Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).

1   liability.[2]   Taser brings a motion to dismiss and argues that it owed no duty to Michael Sanders

2   and that it is not in privity with Sanders.

3

4   **LEGAL STANDARDS**

5   *Rule 8(a)*

6         Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief.

7   "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of

8   the claim showing that the pleader is entitled to relief.'" Sagana v. Tenorio, 384 F.3d 731, 736

9   (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)).  This rule does "not require a claimant to set out in

10  detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957).  The

11  pleadings need only give the opposing party fair notice of a claim and the claim's basis.  Conley,

12  355 U.S. at 47; Sagana, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001).

13  47).  The pleadings are also to "be construed as to do substantial justice," and "no technical

14  forms of pleading . . . are required."  Fed. Rules Civ. Pro. 8(e)(1), 8(f); Sagana, 384 F.3d at 736;

15  Fontana, 262 F.3d at 877.  "Specific legal theories need not be pleaded so long as sufficient

16  factual averments show that the claimant may be entitled to some relief." Fontana, 262 F.3d at

17  877; American Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781, 786 (9th Cir. 1982).

18  Also, there is no longer a heightened pleading standard for constitutional torts in which improper

19  motive is a part of the claim.  See Morgan v. United States, 323 F.3d 776, 780 (9th Cir. 2003);

20  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

21  *Rule 12(b)(6)*

22        Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

23

24  _____

25        [2]This Court granted in part and denied in part a prior motion to dismiss by the City.  In opposing that
      motion, Plaintiffs submitted a proposed second amended complaint.  There was no opposition or reply to that
26    proposed amendment or to Plaintiffs's opposition.  In this motion to dismiss, the City states that although the
      opposition appears on the Court's docket, it did not receive the opposition or the proposed second amended
27    complaint.  Due to the lack of opposition to the proposed second amended complaint, the Court granted leave to file
      the second amended complaint.

28                                                    3

plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Newman v. Sathyavaglswaran, 287 F.3d 786, 788 (9th Cir. 2002); Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996). The Court must also assume that general allegations embrace the necessary, specific facts to support them. See Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren, 328 F.3d at 1139; Western Mining Council, 643 F.2d at 624. Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). A

dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**A.**     **THE CITY'S MOTION**

    **1.**     **Negligence Under The Fifth Cause of Action**

        **a.**     **New Claims**

*Defendant's Argument*

    The City and Chief Dyer argue that Plaintiff has added completely new duty theories that were not present or even "inferable" from the Notice of Claim letter sent to the City.  In the Fifth Cause of Action, Plaintiff now alleges that the City: (1) "owed a duty of care . . . and breached that duty by selecting, procuring, and deploying of weaponry;" (2) "owed a duty . . . and breached that duty to use reasonable care in hiring, training, supervising and retention of persons within their chain of command;" and (3) owed a duty to "reasonably investigate claims of discrimination or harassment."  SAC at ¶¶ 30-32.  Because these causes of action rest on a factual basis that diverges too drastically from the factual basis in the Notice of Claim, they should be barred.  See, e.g., Fall River v. Superior Court, 206 Cal.App.3d 431 (1988); Donahue v. State of California, 178 Cal.App.3d 795 (1986); Lopez v. Southern Cal. Medical Group, 115 Cal.App.3d 673 (1981).  The City argues that the above "breaches of duty" could not have occurred on August 20, 2004,

which is the only date set in the Notice of Claim.  Because such events took place prior to the August 20, 2004, date in the Notice of Claim, they must be dismissed due to the failure to timely file a claim with the City, that is, within six months of complained of conduct.  Under California Government Code 910(c), the appropriate date must be included.  Any conduct occurring before August 20, 2004, is fatally untimely.

### *Plaintiff's Opposition*

Plaintiff argues that a notice of claim need not contain the level of detail required for a pleading, but instead need only fairly describe what the entity is alleged to have done.  If a claim is rejected by a public entity and suit is later filed, the facts underlying each cause of action in the complaint must have been "fairly reflected in the written claim."  Nelson v. State of California, 139 Cal.App.3d 72, 79 (1982).  The claim need not specify each particular act or omission later proven to have caused the injury.  Id.  Plaintiff argues that her Notice of Claim sent to the City "fairly reflects" the factual basis of recovery as stated in the SAC, and in particular a negligence cause of action.

Further, because Plaintiff need not specify each particular act or omission later proven to cause injury, Plaintiff is not required to state the date of each act that came together to cause the result.  Plaintiff has stated the date on which she suffered injury as result of the Defendants's conduct, August 20, 2004, and that complies with the Tort Claims Act.  None of the cases cited by the City stand for the proposition that a plaintiff must state in a notice of claim the specific date of every act that may have come together to play a role in causing a harmful, negligent result.  Such a requirement would create an omniscience requirement that plaintiffs, prior to discovery, simply do not have.

### *Relevant Allegations Under The Fifth Cause Of Action*

The Fifth Cause of Action is identified as "negligence" against Chief Dyer and Does 1-10.  Plaintiff alleges that Chief Dyer and Does 1-10 owe:  (1) a duty of care in the selection, procurement, and deployment of weaponry to prevent foreseeable harm to foreseeable plaintiff;

(2) a duty to use reasonable care in the hiring, training, supervising, and retention of persons within the chain of command; (3) a duty to reasonably investigate claims of discrimination or harassment by persons in their chain of command; and (4) a duty to provide proper post-deployment care and handling of persons electrocuted with Taser products . . . to ensure that they are placed and positioned to allow free flow of air and the ability to adequately breathe. SAC at ¶¶ 30-32. Plaintiff alleges breaches of each of these duties. E.g. SAC at ¶ 33 (defendants breached by "selecting, procuring, and deploying of weaponry in the course and scope of their employment which is dangerously defective and posed an unreasonable risk of serious bodily injury or death when used on persons in an excited state . . . ."); SAC at ¶ 37 (defendants failed to "provide proper post-deployment care and handling of Michael Sanders by failing to ensure that he was placed and positioned to allow free flow of air . . . ."); SAC at 41 (defendants failed to "adequately select, train, retain, supervise, investigate and discipline police officers under their chain of command . . . ."); SAC at ¶ 43 (defendants, after becoming aware of "threatening, harassing and discriminatory conduct of DYER and some or all of DOES 1-10 and the responding officers, negligently failed to correct such conduct and negligently retained [the officers] allowing this threatening, harassing and discriminatory conduct to persist.").

### *Legal Standard – Notice Under The California Tort Claims Act*

As a prerequisite for money damages litigation against a public entity, the California Tort Claims Act requires presentation of the claim to the entity. See Cal. Gov. Code § 945.4;[3] State of California v. Superior Court, 32 Cal.4th 1234, 1240-44 (2004) ("Bodde"). The presented claim must meet the requirements of Government Code § 910. Cal. Gov. Code §§ 910, 945.4; Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal.4th 441, 445 (2004).

---

[3]In its entirety, Cal Gov Code § 945.4 reads:
Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division.

Section 910 requires the claimant to state the "date, place, and other circumstances of the

occurrence or transaction which gave rise to the claim asserted" and to provide a "general

description of the . . . injury, damage or loss incurred so far as it may be known at the time of

presentation." Cal. Gov't Code § 910;[4] Stockett, 34 Cal.4th at 445. These statutes are not

intended "to prevent surprise," rather they are intended to "provide the public entity sufficient

information to enable it to adequately investigate claims and to settle them, if appropriate,

without the expense of litigation." City of San Jose v. Superior Court, 12 Cal. 3d 447, 455 (Cal.

1974); see Stockett, 34 Cal.4th at 446. Because the claims statute is designed to give a public

entity "notice sufficient for it to investigate and evaluate the claim . . . the statute should not be

applied to snare the unwary where its purpose is satisfied," and the "claim need not contain the

detail and specificity required of the pleading, but need only fairly describe what the entity is

alleged to have done." Stockett, 34 Cal.4th at 446. If a plaintiff "relies on more than one theory

of recovery against the [governmental entity], each cause of action must have been reflected in a

timely claim. In addition, the factual circumstances set forth in the written claim must

correspond with the facts alleged in the complaint." Dixon v. City of Livermore, 127

Cal.App.4th 32, 40 (2005); see Stockett, 34 Cal.4th at 447; Nelson v. State of California, 139

Cal.App.3d 72, 79 (1982). "[A] complaint is vulnerable to a demurrer if it alleges a factual basis

for recovery which is not fairly reflected in the written claim." Stockett, 34 Cal.4th at 447.

However, as the California Supreme court has recently explained:

---

[4]Cal. Gov't Code § 910 reads:

A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:
(a) The name and post office address of the claimant.
(b) The post office address to which the person presenting the claim desires notices to be sent.
(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.
(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.
(f) The amount claimed if it totals less than ten thousand dollars ($ 10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($ 10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.

The claim, however, need not specify each particular act or omission later proven to have caused the injury.  A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an "entirely different set of facts."  Only where there has been a "complete shift of allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim" have courts generally found the complaint barred.  Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint.

Id.; see also Dixon, 127 Cal.App.4th at 40; White v. Superior Court, 225 Cal.App.3d 1505, 1510-11 (1990).  In other words, it is permissible to plead additional theories where the "additional theories [are] based on the same factual foundation as those in the claim, and the claim provide[s] sufficient information to allow the public agency to conduct an investigation into the merits of the claim."  Dixon, 127 Cal.App.4th at 42.

Compliance with the Tort Claims Act is an element of a cause of action against a public entity.  See Bodde, 32 Cal.4th at 1240-44; Del Real v. City of Riverside, 95 Cal.App.4th 761, 767 (2002).  As such, "compliance with the claims statute is mandatory and failure to file a claim is fatal to the cause of action."  City of San Jose, 12 Cal.3d at 454 (citations omitted); see Bodde, 32 Cal.4th at 1240.

Further, the Tort Claims Act contains provisions for suits against public employees.  Government Code § 950.2 reads:

> Except as provided in Section 950.4,[5] a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of this division or under Chapter 2 (commencing with Section 945)[6] of Part 4 of this division. This section is applicable even though the public entity is immune from liability for the injury.

Cal. Gov't Code § 950.2.

---

[5] Section 950.4 applies to those who do not know or have reason to know that an injury resulted from conduct by a public entity or a public employee acting within the course and scope of his employment.  Cal. Gov't Code § 950.4.

[6] As discussed above, § 945.4 requires that notice of claim be sent to a public entity before a suit for damages may be brought.  Cal. Gov't Code § 945.4.

9

Accordingly, § 950.2 mandates that "'a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred' unless a timely claim has been filed against the employing public entity." <u>Fowler v. Howell</u>, 42 Cal.App.4th 1746, 1750 (1996).  The California Legislature "included in the Tort Claims Act what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment [must] have filed a claim against the public-entity employer pursuant to the procedure for claims against public entities." <u>Briggs v. Lawrence</u>, 230 Cal. App. 3d 605, 612-13 (1991) (citing Cal. Gov. Code §§ 911.2, 945.4, 950.2, 950.6(a)).

*<u>Plaintiff's Tort Claim Notice Provided To the City and the County</u>*

Plaintiff's Notice of Claim sent to both the City and the County reads:

> 1.  Claimant Layette [sic] Sanders, individually and on behalf of The Estate of Michael Sanders, is located at [Plaintiff's address].
>
> 2.  Any notices pertaining to this matter should be addressed to Claimants' attorney of record, Waukeen Q. McCoy, Esq., . . . .
>
> 3.  The dates and place of the occurrence give rise to the claims of claimant on or about August 20, 2004 and continue until the present in the City of Fresno, County of Fresno.
>
> 4.  The circumstances that gave rise to the claims are as follows: Claimant's husband Michael Sanders died after jolts from Tasers fired upon him by Fresno police officers.  The police knew or should have known that Sanders would have been severely affected by the jolts.
>
> 5.  The names of the public employees causing the death are unknown at this time.  Claimant has been refused the opportunity to obtain the names of the police officers involved before filing of the Notice of Tort claim by the Fresno Police Department.
>
> 6.  Claimant demands compensation in excess of $25,000,000.00 and therefore will not state a demand amount in this notice.

Exhibit A to Declaration of Dow Patten.[7]

---

[7]In the order on the City's first motion to dismiss, this Court took judicial notice of the Notice of Claim sent to the City.  Judicially noticed facts often involve matters of public record, records of state entities, proceedings in other courts either State or Federal, or the court's own records.  <u>See</u> <u>Disabled Rights Action Committee v. Las Vegas</u>

1    *Resolution*

2         As this Court has previously stated, "knew or should have known" is the language of

3    negligence, and thus, puts the City on notice that some form of negligence is being claimed.  See

4    Mayview Corp. v. Rodstein, 620 F.2d 1347, 1358 (9th Cir. 1980); see also Merrill v. Navegar,

5    Inc., 26 Cal.4th 465, 485 (2001).  That the officers either "knew or should have known" may

6    reasonably relate to the adequacy of how the officers performed their duties, were trained, and/or

7    supervised.  Further, this Court has also held that, under *White v. Superior Court*, Plaintiff's

8    negligent hiring, training, supervision, discipline and retention claims against the City were

9    adequately reflected in Plaintiff's Notice of Claim.  See White v. Superior Court, 225 Cal.App.3d

10   1505, 1507-11 (1990).  The Court has not addressed the issue of "selection, procurement, and

11   deployment" of tasers, the issue of "proper post-deployment care and handling of" Michael

12   Sanders, or the precise issue of failure to investigate claims of harassment and discrimination.

13        This Court has previously commented that Plaintiff's Notice of Claim is quite minimal.

14   From Paragraph 4, the focus of the Notice is on the conduct of the officers with respect to

15   Michael Sanders.  The officer's conduct includes "tazing" Sanders and could reasonably

16   constitute "deployment" or use of the taser in that particular encounter.  Cf. SAC at ¶ 38.  It does

17   not, however, constitute selection or procurement of the taser.  The nature of "selection and

18   procurement" of the taser would deal with the decision of the police department to obtain tasers.

19   That is conduct that extends before the tazing occurred, would embrace administrative decisions

20   by the police department, and has nothing to do with the actions of the officers when they tazed

21   Sanders.  The argument that administrative decisions such as procurement of tasers are reflected

22   in Paragraph 4 is unpersuasive.  The City could reasonably be expected to examine the

23   deployment/use of the taser in Sanders's specific case, but it is unreasonable to expect the City to

24

25   Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004); United States v. Author Services, Inc., 804 F.2d 1520, 1523 (9th
     Cir. 1986).  A court may take judicial notice of public records outside the pleadings without converting a motion to
26   dismiss into a motion for summary judgment.  Lee, 250 F.3d at 688-89.  As both the City and Plaintiff rely on the
     Notice of Claim, and since this Court has taken judicial notice of the Notice of Claim in a prior motion, the Court
27   again takes judicial notice of the Notice of Claim (Exhibit A to the Declaration of Don Patten).  Fed. R. Evid. 201.

28                                              11

investigate back in time the decision to even procure tasers.  It is true that the Tort Claims Act is to be liberally construed and should not be read to ensnare the unwary.  See Stockett, 34 Cal.4th at 446.  By the same token, however, litigants cannot use these protections to inflate minimalistic descriptions to include causes of action that are not fairly reflected therein.  Cf. Blair v. Superior Court, 218 Cal.App.3d 221, 226 (1990) (discussing cases wherein a fatal variance was found between the complaint and notice of claim); Fall River v. Superior Court, 206 Cal.App.3d 431, 433-35 (1988).  Plaintiff, through her counsel, could have provided the City with more detail in its Notice of Claim and raised the decision to procure tasers, but chose not to do so.  Because "selection and procurement" of the taser is an improper "shifting" of operative facts and not fairly reflected within the Notice of Claim, this ground of negligence is barred.  See Cal. Gov't Code §§ 910, 945.4, 950.2; Stockett, 34 Cal.4th at 447; Blair, 218 Cal.App.3d at 226; Fall River, 206 Cal.App.3d at 435.

With respect to Plaintiff's allegation of a duty to properly treat Sanders, this claim is embodied in paragraphs 36 and 37 of the SAC.  The Court cannot say that this claim is not fairly reflected in the Notice of Claim.  Unlike the decision to select/procure tasers, there is no shift in the allegations.  The focus remains on the conduct of the officers who tazed Sanders.  By claiming that the officers knew or should have known that Sanders would be "severely affected" by the tazing and stating that the claims arise out of the death of Sanders after he was tazed, Plaintiff has placed the conduct of the officers during the entire encounter into question.  Specifically, the decision and conduct of the officers in deciding to taze and after the tazing is reflected in Paragraph 4.  The City could reasonably be expected to investigate the conduct of the officers before, during, and after they used their tasers in light of Paragraph 4 of the Notice of Claim.  Dismissal of this claim is not appropriate.  See Stockett, 34 Cal.4th at 446-47.

Finally, with respect to Plaintiff's claim of failing to investigate claims of discrimination and harassment, that claim is embodied in paragraphs 32, 40, 43, and 47 of the SAC.  The Court is not convinced that this is a separate ground of negligence since it appears to be a method of

showing negligent hiring, retention or supervision.  Cf. SAC at ¶ 41 (alleging that the failure to

"properly and adequately select, train, supervise, *investigate*, and discipline police officers . . ."

proximately caused harm) (emphasis added).  To the extent that these allegations are simply

methods of showing negligent supervision, hiring or retention, dismissal is not appropriate as

discussed in *White v. Superior Court* and as held in the Court's previous rulings.  To the extent

Plaintiff seeks to recover on the failure to investigate claims of discrimination and harassment as

a separate and independent cause of action, that claim is not fairly reflected in the Notice of

Claim.  There is nothing in the Notice of Claim that raises the issue of police discrimination or

harassment, and the claim would deal with conduct occurring prior to the tazing. Such a claim

would rest on facts that are not fairly reflected in the Notice of Claim and represents an improper

shift in the operative facts.  Without some reference to discrimination, it is unclear how the City

could reasonably be expected to investigate past claims of discrimination.  Dismissal of this

claim as an independent ground of negligence is therefore proper.  See Cal. Gov't Code §§ 910,

945.4, 950.2; Stockett, 34 Cal.4th at 447; Blair, 218 Cal.App.3d at 226; Fall River, 206

Cal.App.3d at 435.

### b.    Propriety of Negligence Allegations Against Chief Dyer

*Defendants's Argument*

Defendants argue "none of the various negligence theories of 'negligence' may survive

against Chief Dyer or vicariously against the City."  Defendants's Motion at 6:27-28.  Defendants

argue that replacing the City with Chief Dyer in the Fifth Cause of Action does not cure

Plaintiff's failure to allege a specific statutory basis for negligence.  In *Munoz*, the Court of

Appeals did not permit direct or vicarious liability for negligence with respect to Police Chief Al

Guzman.  Munoz v. City of Union City, 120 Cal.App.4th 1077, 1113 (2004).  Plaintiff is

impermissibly trying to assert negligence against the City through Chief Dyer.  The *Munoz* Court

disallowed theories of "negligent supervision, hiring, etc." as against Union City and Chief

Guzman since such theories are not set forth in any requisite statutes, as required by *Eastburn*.

"[A]ttempting to simply add Chief Dyer as an individual Defendant in an attempt to avoid the clear prohibition of alleging negligence against a public entity is not permissible since it is virtually the same as attempting to impermissibly set forth the same claims against the City . . . because the City necessarily acts through its Police Chief."  The City cannot be a "vicarious" defendant in impermissible claims of negligence absent some identified permissible individual defendant.  See Munoz, 120 Cal.App.4th at 1113-14.

### Plaintiff's Opposition

Plaintiff argues that the cases relied upon by the City and Chief Dyer defeat their own arguments. *Eastburn* is not dispositive because that case included an additional statutory immunity for emergency responders, whose conduct was at issue.  Also, *Munoz* held that a governmental entity could be liable for negligent training and supervision if the complaint alleged breaches of duty by specific employees.  See Munoz, 120 Cal.App.4th at 1112 n.11.  Here, the SAC does not attempt to impose direct liability on the City, rather, the allegations of negligence are against the employees of the City: Chief Dyer and Doe officers.  The SAC specifically references *respondeat superior* and California Government Code § 815.2(a).  The Fifth cause of action alleges negligence against a specific City employee and Doe officers.  Thus the City remains vicariously liable through application of *respondeat superior* as alleged in the Eleventh Cause of Action.  Dismissal is inappropriate.

### Legal Standard

"Except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person."  Cal. Gov't Code § 815.  The intent behind the statute "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances."  Zelig v. County of Los Angeles, 27 Cal. 4th 1112, 1127-28 (2002) (citation omitted).  Accordingly, the first step for purposes of § 815 is to "determine whether any statute imposes *direct* liability on [public entities]."  Eastburn v.

14

Regional Fire Protection Authority, 31 Cal.4th 1175, 1179 (2003) (italics in original).  "All government tort liability must be based on statute."  Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925, 932 (1998).  The common law and general tort principles embodied in California Civil Code § 1714,[8] which imposes a duty to act with reasonable care, are insufficient to create direct liability and bypass the immunity of Government Code § 815.  Eastburn, 31 Cal.4th at 1183; Munoz v. City of Union City, 120 Cal.App.4th 1077, 1112 (2004).

With respect to negligence by a public employee, such an employee is generally "liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov't Code § 820(a); Hoff, 19 Cal.4th at 932.  Furthermore, Government Code § 815.2 "expressly makes the doctrine of respondeat superior applicable to public employers."  Hoff, 19 Cal.4th at 932.  A "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2(a).  Thus, § 815.2 "makes a public entity vicariously liable for its employee's negligent acts or omissions within the scope of employment."  Eastburn, 31 Cal.4th at 1180 (emphasis in original); Hoff, 19 Cal.4th at 932.  However, "liability of the employer only attaches if and when it is adjudged that the employee was negligent," and, although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability."  Munoz, 120 Cal.App.4th at 1113.

*Discussion*

Although not stated in these words, Defendants's argument is that Chief Dyer and the City are essentially one in the same, and since a specific statute is necessary to hold the City directly liable for negligence, a specific statute is required to hold Chief Dyer liable as well.

---

[8]California Civil Code § 1714(a) provides in relevant part:
Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

"The police department of a city is under the control of the chief of police."  Cal Gov Code § 38630(a).  In *Munoz*, the Court of Appeals grouped Union City, the Union City Police Department, and Chief Guzman together, but does not go into great detail regarding the Union City Police Chief, Al Guzman.  <u>Munoz</u>, 120 Cal.App.4th at 1081 ("In a suit . . . against the City of Union City, the Union City Police Department, and the Union City Chief of Police (collectively referred to as Union City or appellants), as well as Union City Police Corporal Tod Woodward (referred to as Woodward or collectively with Union City as appellants) . . .").  The *Munoz* plaintiffs alleged nine causes of action, but only one claim, for negligent selection, training, retention, supervision, and discipline, against the Police Chief.  <u>Munoz</u>, 120 Cal.App.4th at 1112.

> The operative first amended complaint (FAC) filed below by respondents pleaded nine causes of action, and named as defendants only Union City, Union City Police Chief Al Guzman, and Corporal Woodward.  The first five claims focus on the alleged negligent acts or omissions of Woodward and his subordinates at the scene of the shooting. The sixth cause of action is directed against Union City and Chief Guzman, and, much like the claims at issue in Eastburn, alleges negligence in the selection, training, retention, supervision, and discipline of police officers as well as the failure to enact procedures and policies guiding law enforcement officers "in the handling of critical incidents." The seventh cause of action is titled "Respondeat Superior" and alleges that Union City bears legal responsibility for the conduct charged against Woodward only, pursuant to Government Code section 815.2, subdivision (a).  Thus, it is clear from respondents' pleading that at least two separate theories of liability were pursued against Union City: one under the doctrine of respondeat superior, or vicarious liability, for Woodward's actions at the scene, and one for direct liability for not having done more to prevent the confrontation from developing, either through the promulgation of clearer police procedures, or by better officer training and supervision.
>
> . . . . . . .
>
> Like the plaintiff in Eastburn, respondents have been unable to refer us to any statutory basis either declaring Union City directly liable under the circumstances of this case or, at least, one creating a specific duty of care. Perhaps in recognition of their dilemma, on appeal respondents argue instead that the direct negligence portion of the jury's verdict is premised on vicarious liability principles because "all public entity liability for negligence is vicarious ... ." But respondents' argument fails for several reasons.

<u>Munoz</u>, 120 Cal.App.4th at 1112-13.  Additionally, the concurring justice in *Munoz* agreed with this aspect of the holding.  The concurrence stated:

16

> I also agree that the recent decision of our Supreme Court in Eastburn v. Regional Fire Protection Authority (2003) 31 Cal.4th 1175 (Eastburn) requires us to reverse that portion of the jury's verdict against the City of Union City, the Union City Police Department, and the Chief of Police (collectively Union City) based on the direct negligence of Union City. For those reasons, I concur in the judgment.

Id. at 1115 (Kline, J., concurring).

A recent Northern District of California case has addressed *Eastburn* and *Munoz*. In *Reinhardt v. Santa Clara County*, plaintiffs alleged a claim against public entities for failure to train and supervise. The *Reinhardt* court noted that the plaintiffs had not pointed to a statute that imposed a duty and that Government Code § 815.2 only imposed vicarious liability for acts of an employee. Citing *Munoz*, the district court held, "Failure to train, however, is a 'direct' act on the part of the entity, not on the part of the employee." Reinhardt v. Santa Clara County, 2006 U.S. Dist. LEXIS 14626 at *20 (N.D. Cal. 2006); cf. Walker v. County of Santa Clara, 2005 U.S. Dist. LEXIS 42118 at*27-*30 (N.D. Cal. 2005).

From *Munoz* and *Reinhardt*, a claim for negligent selection, training, retention, supervision, and discipline that is made against the Police Chief is in fact a claim for direct liability against the public entity. In *Munoz*, the only claim against Chief Guzman was negligence in the selection, training, retention, supervision, and discipline of police officers. Munoz, 120 Cal.App.4th at 1112. This claim was also made against the public entity, Union City. Id. However, the Court of Appeals did not distinguish between Chief Guzman and Union City when it required the plaintiffs to identify a specific statute imposing a duty, as required by *Eastburn*. See id. at 1112-13. Further, the concurring opinion in *Munoz* agreed that the judgment against Union City and Chief Guzman for direct liability, i.e. negligent selection, training, retention, supervision, and discipline, were required to be vacated in accordance with *Eastburn*. Id. at 1115.

In the case at bar, Plaintiff merely states that *Munoz* held that an entity can be vicariously

liable for the acts of an identified employee.[9]  Plaintiff nowhere discusses *Munoz*'s treatment of Chief Guzman and the vacation of the negligence finding against him.  Plaintiff has not shown why *Munoz* would not require dismissal of the direct negligence claim against Chief Dyer for negligent selection, training, retention, supervision, and discipline.  As Plaintiff has failed to identify a statute that imposes such a duty, dismissal without leave to amend is appropriate.  See Reinhardt, 2006 U.S. Dist. LEXIS 14626 at *20; Eastburn, 31 Cal.4th at 1179-80; Munoz, 120 Cal.App.4th at 1112-13.

However, the complaint also appears to allege that Chief Dyer was present and was one of the officers who tazed and failed to properly treat Sanders.  See SAC at ¶¶ 36-38.  Although the Court harbors doubt that Chief Dyer was actually present and tazed Sanders, the Court must assume that these allegations are true.  Tazing Sanders seems more akin to an action by an individual police officer as opposed to conduct that is a direct act by the entity.  Cf. Reinhardt, 2006 U.S. Dist. LEXIS 14626 at *20.  A public employee is generally "liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov't Code § 820(a); Hoff, 19 Cal.4th at 932.  Furthermore, Government Code § 815.2 "expressly makes the doctrine of *respondeat superior* applicable to public employers."  Hoff, 19 Cal.4th at 932. *Munoz* did not address a claim that the Union City Police Chief was present and participated in the shooting as an individual police officer.  See Munoz, 120 Cal.App.4th at 1112.  Rather, the claim in *Munoz* against the Union City Police Chief was limited to negligent hiring, training, retention, supervision, and discipline.  Id.  Defendants do not explain why *Munoz* would operate to bar individualized police conduct by Dyer since Dyer presumably is also a police officer and an employee of the City.  Cf. Redman v. County of San Diego, 941 F.2d 1435, 1446 (9th Cir. 1991)

---

[9]Plaintiff specifically argues that *Munoz* "held a governmental entity could be liable for negligent training and supervision if the complaint alleged breaches of duty by specific employees.  See 120 Cal.App.4th at 1112, fn. 11."  Plaintiff's Opposition at 5:24-26.  This is not entirely accurate as Chief Guzman was specifically identified and footnote 11 is in response to an allegation involving doe defendants and reads, "Although this cause of action [seventh cause of action based on *respondeat superior*] also included reference to 'Does 1 through 50,' no other individual employees or agents of Union City were later identified by amendment to the complaint."  Munoz, 120 Cal.App.4th at 1112 n.11.

(noting that under 42 U.S.C. § 1983 a supervisor may be individually liable for his or her personal involvement in a constitutional deprivation).  *Munoz* does not hold that every action taken by a Police Chief is the equivalent of the public entity acting.  Based on the authority cited and arguments made *at this point* in the proceedings, the Court will not dismiss the claims in the Fifth Cause of Action that are based on conduct done within the apparent course and scope of Dyer's employment as an individual police officer at the tazing, which are alleged at paragraphs 36, 37, and 38 of the SAC.  Cf. Reinhardt, 2006 U.S. Dist. LEXIS 14626 at *20; Munoz, 120 Cal.App.4th at 1112-13.

Accordingly, claims for negligent training, discipline, retention, etc. made against Chief Dyer in the Fifth Cause of Action are dismissed without leave to amend.  See Reinhardt, 2006 U.S. Dist. LEXIS 14626 at *20; Munoz, 120 Cal.App.4th at 1112-13.  However, claims in the Fifth Cause of Action against Dyer for his individual conduct at the tazing of Sanders at paragraphs 36, 37, and 38, will not be dismissed at this point.

In the Eleventh Cause of Action, Plaintiffs allege that the City is vicariously liable for the acts of Chief Dyer and Doe officers.  Since the claims against Chief Dyer for negligent training, retention, discipline, etc. are in reality a direct claim against the City, there is no vicarious liability for Chief Dyer's alleged negligent training, retention, hiring, etc., as explained above.  See Reinhardt, 2006 U.S. Dist. LEXIS 14626 at *20; Munoz, 120 Cal.App.4th at 1112-13.  However, there is also a claim for alleged negligent conduct by Chief Dyer and the Doe defendants for conduct within the course and scope of their employment as individual police officers, as opposed to direct acts of the City, that occurred at the tazing.  Cf. Reinhardt, 2006 U.S. Dist. LEXIS 14626 at *20; Munoz, 120 Cal.App.4th at 1112-13.  Accordingly, at this point, the Eleventh Cause of Action will not be dismissed.

//

//

**B.**     **TASER'S MOTION TO DISMISS**

Plaintiff alleges theories of wrongful death, products liability, strict liability, and breach of warranties against Taser.  Taser argues that dismissal is appropriate because Plaintiff has not pled sufficient facts to show that it owed a duty to Sanders, that the manufacturing and sales of tasers are not abnormally dangerous activities, that Plaintiff has not adequately pled causation, and that there is no privity between the Sanderses and Taser.

**1.**     **Duty Owed To Sanders**

*Defendant's Arugment*

Taser argues that under California's wrongful death act, a plaintiff must prove that a wrongful act or neglect on the part of one or more persons caused the death of another.  However, to show negligence, Plaintiff must allege facts that show that Taser owed a duty to Sanders.  Under the factors enunciated in *Rowland v. Christian* for determining whether to impose a duty, Taser owed no duty to Sanders.  First, the harm suffered by Sanders was not reasonably foreseeable since the taser is not designed to benefit Sanders and Sanders was not the buyer or end user.  Second, there is not "closeness of connection" between Taser and the death of Sanders since Taser did not control the actions of the police officers or the actions of Sanders, there was no Taser representative present, and there is no indication that the taser weapon did anything other than what it was designed to do.  Third, any moral blame attaching to Taser is far outweighed by the moral blame of persons such as Sanders who engaged in disruptive behavior, especially considering the lives that Taser's products save.  Fourth, the policy of preventing future harm is not advance by imposing a duty on Taser since the use of tasers provides a non-lethal option to be used at the discretion of the police.  Fifth, the burden on Taser and the impact on society is heavy because it is a choice to protect risks to criminals over the safety of law enforcement.  Finally, public policy requires that no duty be imposed on Taser because strict liability was never intended to make the manufacturers of a product its insurer and because imposition of the duty on Taser would excuse the criminal conduct of the injured party,

especially when a party such as Sanders is harmed because the police are responding to a call. Thus, no duty should be imposed and Plaintiff's wrongful death claim should be dismissed.

*Plaintiff's Response*

Plaintiff argues that Taser owed Sanders a duty.  First, it is foreseeable that police will use tasers on people and repeatedly electrocute them, such as in this case.  Second, Sanders suffered an injury after being electrocuted by the tasers.  Third, Sanders injury is closely related since the SAC alleges that Taser failed to properly design and test their product and failed to adequately warn of the consequences multiple shocks, which failure resulted in the death of Sanders.  Fourth, Taser conducts training for law enforcement and mandates the use of certain trainers, and thus, Taser plays a greater role than other manufacturers over how one uses its products.  Fifth, Taser is blameworthy since it is profiting from the sale of a defective product.  Sixth, there are other options and choices available to police officers other than use or non-use of a firearm.  Seventh, there is no extra burden on Taser since they should bear the same burden as all others, i.e. be held accountable for foreseeable harm to foreseeable plaintiffs.  Finally, public policy supports holding Taser accountable since the use of deadly force by the state is a critical public policy.  It is not good public policy to allow manufactures to introduce products to the stream of commerce that can cause death without any liability is contrary to law.  Further, there are no facts in the complaint that show Sanders was engaged intentional criminal conduct or disruptive behavior.

*Relevant Allegations*

After incorporating the 13 prior paragraphs by reference, Plaintiff alleges:

Defendants and each of them committed unlawful acts that directly contributed to the loss of the life of [Sanders].  Defendants and each of them knew of the risk of harm from [tasers] in general, as well as the risk of harm of using [tasers] on a naked individual, including but not limited to severe pain, possible cardiac complications and even death.  Defendants CITY OF FRESNO, COUNTY OF FRESNO, TASER, and CHIEF DYER knew of the likelihood that [Sanders] would suffer substantial harm from being tased numerous times on his naked body.  Defendants also knew of the likelihood that [Sanders] would suffer great

21

bodily harm, including but not limited to, severe pain or death by placing him face
down on a gurney.  This position asphyxiated him, thereby contributing to his
death.

. . . . . .

As a proximate result of the acts of defendants and of the death of the decedent
[Sanders], Plaintiff [] has sustained pecuniary loss resulting from the loss of
society, comfort, attention, consortium, services and support of [Sanders].

SAC at ¶¶ 15, 17.

At paragraph 13, Plaintiff alleges:

The weapon and darts fired by the officers on the night of the incident were
manufactured by [Taser] . . . .  Although Taser advertises its product as a safe,
non-lethal alternative to firearms, its own literature undermines this claim.  For
example, individuals with pre-existing heart conditions are encouraged not to
volunteer to be electrocuted with Taser products.  In fact, there is significant
concern in the medical community regarding the danger of tasers on excited,
intoxicated individuals or those with pre-existing heart conditions, specifically
that such individuals are more prone to the adverse effects of tasers, especially
cardiac complications, including serious injury and even death in some instances.

SAC at ¶ 13.

_Resolution_

Both sides argue that the factors of _Rowland v. Christian_ support their position either for

or against the imposition of a duty of care against Taser for purposes of Plaintiff's wrongful

death cause of action.  Under California law, "as a general rule, each person has a duty to use

ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the

circumstances."  Parsons v. Crown Disposal Co., 15 Cal.4th 456, 472 (1997); Rowland v.

Christian, 69 Cal.2d 108, 112 (1968); see also Cal. Civ. Code § 1714.  "Whether a given case

falls within an exception to this general rule, or whether a duty of care exists in a given

circumstance, is a question of law to be determined on a case-by-case basis."  Parsons, 15 Cal.4th

at 473; see also Rowland, 69 Cal.2d at 112-13  Some of the considerations that courts have

examined to determine if an exception to the general duty rule applies are:

foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Parsons, 15 Cal.4th at 473; Rowland, 69 Cal.2d at 113.  However, a "manufacturer/seller of a product is under a duty to exercise reasonable care in its design so that it can be safely used as intended by its buyer/consumer."  Gu v. BMW of North America, LLC, 132 Cal.App.4th 195, 206 (2005); Williams v. Beechnut Nutrition Corp., 185 Cal.App.3d 135, 141 (1986).  "Similarly, [the] manufacturer's duty of care extends to all persons within the range of potential danger."  Gu, 132 Cal.App.4th at 206; Williams, 195 Cal.App.3d at 141.

From the above, as a manufacturer, Taser owes a duty of reasonable care to all persons within the range of potential danger of its products.  It is true that Sanders was not the purchaser or end-user of the tasers, but he is clearly someone within the range of potential danger.  Tasers are intended to subdue or temporarily incapacitate persons.  The persons within the range of danger are the officers using the tasers and the suspects being tazed.  The complaint alleges that Taser advertises its product as a safe non-lethal alternative to a firearm.  As such, Taser is under a duty to exercise reasonable care such that its products may be safely used by police officers as a non-lethal option against suspects.  Cf. Lewis v. City of Tallahasee, 2006 U.S. Dist. LEXIS 6316 (N.D. Fla. 2006); Gu, 132 Cal.App.4th at 206; Williams, 195 Cal.App.3d at 141.

Since this is a 12(b)(6) motion, the Court examines only the pleadings, makes all reasonable inferences in the Plaintiff's favor, and assumes that the matters pled are true.  Under this framework, the Court cannot say that Taser should be excepted from its duty of care as a manufacturer.  First, it is clearly foreseeable that a person tazed may suffer harm from the taser or the tazing.  Second, the allegations suggest Plaintiff and Sanders suffered harm from Taser's product.  Third, although Taser argues that its moral blameworthiness is less than the blameworthiness of Sanders's own disruptive conduct, Plaintiff is correct that the complaint does

23

not support this assertion.  The complaint states that Sanders was disoriented and standing

unclothed behind his wife; this suggests a confused person and not necessarily a criminal.  See

SAC at ¶ 10.  Fourth, the Court does not see a burden on Taser that is any greater than that

imposed upon any other manufacturer.  Finally, the Court does not see that an undue burden will

be placed on the community if Taser is held to the normal duty of care of a manufacturer.

Assuming that some of the *Rowland* factors favor excepting Taser from its general duty

as a manufacturer, the majority of the *Rowland* factors do not favor the exception.  Much of

Taser's argument seems to exceed the pleadings and is ill suited for a 12(b)(6) motion.  Since

Sanders was a person within the range of danger of the taser, Taser owed Sanders a duty of care.

Accordingly, dismissal of the First Cause of Action on this ground will be denied.

### 2.      Products Liability & Causation

*Defendant's Argument*

Taser argues that dismissal of Plaintiff's sixth claim for products liability is appropriate

because Taser owed no duty to warn Sanders about the alleged risks or dangers of its product.

But, even if such a duty existed, the taser is not an inherently dangerous product.  California

courts have found that the use of firearms does not fall within the category of ultra-hazardous

activity which result in the imposition of absolute liability.  If the use of a firearm is not an ultra-

hazardous activity, then the non-lethal taser cannot be considered an ultra-hazardous activity.

Plaintiff cannot state a claim for strict liability because Plaintiff's allegations fail to establish that

Taser manufactures an inherently dangerous product.

Taser also argues that regardless of the theory, Plaintiff must still allege sufficient facts

that a defect in the taser was a proximate cause of Sanders's death.  Plaintiff has not alleged

sufficient facts which would indicate that the taser did anything other than what it was designed

to do with proper use.  The police, not Taser, determined the need to use the weapon as well as

the amount of exposure to apply.  To read Plaintiff's allegations as creating strict liability would

effectively make Taser the life insurer of everyone who resists or fights with the police.

*Plaintiff's Response*

Plaintiff argues that the firearm cases relied upon by Taser are inapposite because Plaintiff is not alleging that Taser is manufacturing an ultrahazardous product. Rather, Plaintiff is simply pleading that Taser introduced a defective product into the stream of commerce which caused harm to Sanders. In California, it is not necessary to prove that a product is ultrahazardous or unreasonably dangerous for purposes of strict liability. Rather, it is sufficient to allege that the product contains a defect. A product may be defective under either a consumer expectation test or a risk utility test, but the product need not be ultrahazardous.

Plaintiff also argues that the SAC has alleged facts that the acts and omissions of Taser caused Sanders's death, and it is improper for Taser to argue its defense of causation in the context of a motion to dismiss. Moreover, failing to test the product on a variety of persons in a variety of situations renders the product unsuitable for introduction into commerce. "It is similarly clear that failing to warn of the consequences of applying the device thirteen times in rapid succession on a disoriented person may cause injury is clearly related to the death of Michael Sanders."

*Relevant Allegations*

After incorporating the preceding 48 paragraphs, the FAC alleges:

Defendant TASER manufactured and distributed [] energy devices for use in law enforcement, private security, and "personal defense." TASER distributed that product in the State of California and elsewhere for the purpose and ultimate sale as energy devices for use in law enforcement, private security, and personal defense.

When Plaintiff sustained injuries mentioned above, the taser was in a defective condition and unreasonably dangerous in that it would cause death of individuals arrested by law enforcement when the product was discharged against them by the officers. It was the duty of TASER to deliver the taser at the time of sale by them in a condition fit for use for the purpose intended. The breach of that duty by defendant and the defective condition of the taser, was a proximate cause of the injuries sustained by [Sanders.]

As a direct result of the breach of duty by the defendant and the defective condition of the taser, [Sanders] was killed by the product.  Therefore, [Plaintiff] is entitled to damages.

SAC at ¶¶ 50-52.

    *Resolution*

Taser's argument is that strict liability is inappropriate because it does not manufacture an ultrahazardous product.  However, a claim of strict products liability does not depend upon the product being considered "ultrahazardous," rather the product must be defective.  See Merrill, 26 Cal. 4th at 479; Cronin v. J.B.E. Olson Corp., 8 Cal.3d 121, 130, 135 (1972); Mancuso v. Southern Cal. Edison Co., 232 Cal.App.3d 88, 96 (1991) (". . . strict product liability is imposed on a power company not because it is engaged in an ultrahazardous activity (which it is not . . .), but because it has sold and delivered a defective product to a customer which has resulted in injury or damage.").  Thus, Plaintiff need simply allege that the tasers were defective.  In paragraphs 51 and 52 of the SAC, Plaintiff alleges that the tasers used against Sanders were in a defective condition in that they would cause death.  Plaintiff does not expressly state under what theory the tasers were defective, but Taser does not request dismissal on such a basis.  Since Plaintiff has alleged that the tasers were defective, and Plaintiff is not required to allege that the taser is an ultrazhardous product, Taser's argument is without merit.

With respect to causation, there is no allegation that Sanders was shocked "thirteen times" in succession and there does not appear to be an express claim of a defect based on a failure to warn.[10]  However, as discussed above, Plaintiff does allege that the taser was defective and would cause death to those individuals on whom it was discharged.  See SAC at ¶ 51.

---

[10]The strict liability claim, the Sixth Cause of Action, alleges that the tasers were defective in that they "would cause death of individuals arrested by law enforcement when the product was discharged against them by the officers."  The precise theory of defect is not identified.  Plaintiffs also allege a negligent misrepresentation claim against Taser in the Ninth Cause of Action, but the elements of negligent misrepresentation are not the same as a products liability claim based on inadequate warnings.  Cf. Judicial Council of California, Civil Jury Instructions (January 2006 Ed.) (hereinafter "CACI") § 1205 and CACI § 1222 with CACI § 1903.

26

Plaintiff also alleges that the defective condition of the taser was a proximate cause of the injuries sustained by Sanders, and that as a direct result of breaches of duty by Taser and the defective condition of the tasers, Sanders died. Id. at ¶¶ 51-52.  In earlier paragraphs that are incorporated by reference, Plaintiff alleges that there are significant concerns in the medical community regarding the danger of tasers on excited, intoxicated individuals or those with pre-existing heart conditions in that such individuals are more prone to adverse effects, including cardiac complications and in some instances death. Id. at ¶ 13.  Further, Plaintiff alleges that the police arrived, excessively fired numerous taser darts into Sanders, handcuffed Sanders, placed Sanders face down on a gurney, and then Sanders stopped breathing. Id. at ¶ 12.

Making all reasonable inferences in Plaintiff's favor, paragraph 12 suggests Sanders was tazed multiple times, was not strong enough to get up but instead had to be placed on a gurney, and then stopped breathing.  The timing between Sanders being tazed and the cessation of breathing appears to be relatively quick.  Further, assuming the allegation in paragraph 13 to be true and also assuming that part of Sanders's disorientation entailed excitement, Sanders's loss of breath and death appear to potentially be a danger associated with tasers that the medical community is concerned about.  Assuming these allegations to be true and viewing them in the light most favorable to the Plaintiff, Plaintiff has alleged sufficient facts to support causation.  That is, these allegations could show that the tasers's defective condition was a substantial factor in causing harm and/or death to Sanders.  See CACI §§ 430, 431, 1201, 1203, 1204, 1205 (instructions defining substantial factor and indicating that a defect must be a substantial factor in causing harm under the defect in manufacturing, design, or warning strict product liability theories).  This ground for dismissal will be denied.

### 3.    Breach of Express & Implied Warranties

*Defendant's Argument*

According to Taser, Plaintiff alleges that law enforcement agencies relied on Taser's representations about the safety of the tasers.  Taser argues that those allegations fail to state a

27

claim for breach of either express or implied warranty because Taser had no contractual

relationship with Plaintiff or Michael Sanders.  Both express and implied warranties require

privity between the manufacturer and the plaintiff.  Here, there are only allegations of sales to

law enforcement agencies, which shows that Plaintiff and Sanders are third parties to the

transaction.  There are no allegations indicating communications or representations between

Plaintiff or Sanders and Taser, there are no allegations Plaintiff or Sanders entered into a

contractual relationship, and neither Plaintiff nor Sanders were end users of the tasers.  Because

there is no privity, dismissal is appropriate.

### *Plaintiff's Opposition*

Plaintiff argues that privity is not required in this case.  Although privity is generally

required, there are exceptions to that requirement.  California courts have created exceptions to

privity for food, drugs, pesticides, and certain items purchased by employers for use by

employees.  In creating an exceptions for drugs, the *Gottsdanker* court opined, "We can conceive

of no reason for applying the rule to foodstuffs which does not equally extend to drugs.  The

vaccine here involved is, like food products, designed solely for introduction into the body of a

human being."  Gottsdanker v. Cutter Laboratories, 182 Cal.App.2d 602, 607 (1960).  Here, the

Taser is designed with "darts," projectiles with barbs whose sole purpose is to be introduced into

the body of a human in order to deliver an electrical shock.  "When the relationship between the

manufacturer and the person whose body the product is intended to enter is clear, an extension of

the clear trend toward abolishing privity for warranty-based liability should be merited."

Plaintiff's Opposition at 7:27-8:2.  According to Plaintiff, this argument presents a "novel legal

theory," which means 12(b)(6) dismissals are "especially disfavored."  Baker v. Cuomo, 58 F.3d

814, 818-19 (2d Cir. 1995).  Factual development is therefore necessary to assess the assertion of

warranty-based liability against Taser.

Additionally, the firearm cases cited by Taser are inapposite.  Instead, mace cases are

more on point, such as *Klages v. General Ordnance Equipment Corp.*, 367 A.2d 304 (1976),

where the court applied Restatement 2d § 402B to a hold the manufacturer liable to the purchaser of a mace pen where the mace pen failed to immediately stop a robber.

### Relevant Allegations

With respect to breach of express warranty, Plaintiff alleged in pertinent part:

Defendant induced purchases of the [tasers] by expressly warranting by advertisements directed to the attention of the public and particularly to ultimate consumers, such as law enforcement, that those consumers could safely use the [Tasers] for the purpose of subduing suspects.  Defendant Taser expressly warranted that the product was safe, would not cause injuries to police officers or individuals arrested by police officers, would actually reduce the risk of injury to police officers or those individuals that are subjected to be fired upon by the [Tasers] manufactured by defendant.

Defendant's express warranties were not true and the [Taser] was not safe or reasonably suitable and fit for the uses advertised by defendant to the public, including this plaintiff.  Those breaches of express warranties by the defendant were a proximate cause of the plaintiff's accident and injuries as alleged in this complaint.

SAC at ¶¶ 54-55.

With respect to breach of implied warranty, Plaintiff alleged in pertinent part:

At all times mentioned in this action, defendant was designed and manufactured [tasers] for use by ultimate consumers as a mechanism to be used by law enforcement to subdue and arrest suspects.

Defendant impliedly warranted that the [Taser] was fit for the purpose for which it was designed, that it was safe and suitable instrument to be sued in law enforcement as a weapon to subdue individuals under arrest, and that the [Taser] was fit and suitable for the use in fact made.

Plaintiff relied on defendant's skill and judgment and the implied warranty of fitness for the purpose for which it was used.[11]  The [Taser] was not fit for the use for its intended purpose and as a proximate result of defendant's breach of warranty of fitness of the [Taser], Michael Sanders was ultimately killed.

---

[11]The allegation that Plaintiff relied on Taser's skill and judgment is contrary to the prior factual allegations and to Plaintiff's opposition.  Because it is an unsupported legal conclusion, contrary to the complaint, and contrary to the opposition, the Court will not accept this allegation as true.  See Warren, 328 F.3d at 1139; Sprewell, 266 F.3d at 988; Western Mining Council, 643 F.2d at 624.

SAC at ¶¶ 58-60.

Additionally, Plaintiff alleges:

. . . Fresno Police Department and other instructions require that the [tasers] not come into contact with human skin.  Rather, the [tasers] are required and designed to come in contact with the clothing of a suspect.  The model of [taser] used by the Fresno police has two cartridges of darts that transmit a pulse of energy into the central nervous system to incapacitate.

SAC at ¶ 11.

### _Legal Standard_

Section 2313(2) of Uniform Commercial Code reads, "Any . . . promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise."  Similarly, as noted in 3 Witkin: Sales, § 72, an implied warranty may be imposed "on any seller possessing sufficient skill and judgment to justify the buyer's reliance."  California recognizes both the implied warranty of fitness and the implied warranty of merchantability.  However, the "general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is [not] a party to the original sale."  Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954); see Margarita Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575, 579-80 (N.D. Cal. 1999); Windham at Carmel Mountain Ranch Assn. v. Superior Court, 109 Cal.App.4th 1162, 1169 (2003); All West Electronics v. M-B-W, 64 Cal.App.4th 717, 725 (1998); Fieldstone Co. v. Briggs Plumbing Products, Inc., 54 Cal.App.4th 357, 369 n.10, 371 (1997).  Specifically, a plaintiff alleging breach of warranty claims must stand in "vertical privity" with the defendant.  See Kennedy v. Baxter Healthcare Corp., 43 Cal.App.4th 799, 810-11 (1996); Osborne v. Subaru of America, Inc., 198 Cal.App.3d 646, 656 (1988).  Vertical privity means that the plaintiff and the defendant must "occupy adjoining links in the distribution chain."  Kennedy, 43 Cal.App.4th at 810-11; Osborne, 198 Cal.App.3d at 656 n.6.  "For example, the distributor is normally in

vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer.  But if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense." Osborne, 198 Cal.App.3d at 656 n.6.  There are exceptions to the privity requirement, such as: (1) reliance on the manufacturer's written representations in labels or advertising materials; (2) cases involving foodstuffs, drugs, and pesticides; and (3) cases involving certain employees who are injured while using dangerous products purchased by their employers. Windham, 109 Cal.App.4th at 1169; Fieldstone, 54 Cal.App.4th at 369 n.10.  However, a "demurrer is properly sustainable in an action predicated upon a breach of an implied warranty when lack of privity between plaintiff and defendant is disclosed on the fact of the complaint." Windham, 109 Cal.App.4th at 1169; Anthony v. Kelsey-Hayes, Co., 25 Cal.App.3d 442, 448 (1972).

*Resolution*

Plaintiff acknowledges that California generally requires vertical privity for claims of breach of express and implied warranty.  See Plaintiff's Opposition at 7:8-10.  Instead of arguing that Plaintiff meets the privity requirement, Plaintiff relies on *Gottsdanker* and *Klages* to argue that an exception should apply and that she is alleging a "novel" legal theory that would benefit from discovery.

*Klages* is a Pennsylvania decision that involved a mace pen.  Klages, 367 A.2d at 306-07. Plaintiff relied upon literature distributed by the mace manufacturer that stated that the mace would immediately incapacitate assailants.  Id.  The plaintiff used the mace against a robber, but the robber was not immediately incapacitated and shot plaintiff in the head.  Id.  The *Klages* court adopted Restatement 2d Torts § 402B[12] and held that the plaintiff had relied on the express

---

[12]Restatement (Second) Torts § 402B provided:
One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

representations in the literature distributed by the manufacturer.  Id. at 312-13.  The *Klages* court also recognized that the Pennsylvania Supreme Court had "eliminated traditional privity theory in warranty actions."  Id. at 314.  In the case at bar, however, there are no allegations that either Plaintiff or Michael Sanders relied on any literature or labels from Taser, cf. Fieldstone, 54 Cal.App.4th at 369 n.10, and, unlike Pennsylvania, privity generally remains a requirement for warranty claims.  E.g. Windham, 109 Cal.App.4th at 1169; All West Electronics, 64 Cal.App.4th at 724.  *Klages*, which is a misrepresentation case that has never been cited by California courts, is not a sufficient bases to change existing California law.

With respect to *Gottsdanker*, that case extended an exception to privity to vaccines since vaccines were very similar to foodstuffs: both products were intended for "ingestion" or "introduction" into the human body.  See Gottsdanker, 182 Cal.App.2d at 607.  However, a taser is neither a medicine nor a foodstuff, nor is it intended for direct ingestion or introduction into the human body like food or medicine.  If a consumer purchases a taser, there is no intent to ingest the taser.  Although Plaintiff argues in her opposition that the taser barbs are intended to be introduced into the human body to deliver an electrical current, her complaint does not support the assertion.  The complaint states that tasers "are required and designed to come in contact with the clothing of a suspect."  SAC at ¶ 11.  California courts do not appear particularly receptive to extending the privity exception to products beyond medicines, pesticides, and foodstuffs.  See Windham, 109 Cal.App.4th at 1169 (noting that exceptions to privity apply to certain products).  In fact, the exception for foodstuffs was recognized in 1939, see Klein v. Duchess Sandwich Co., Ltd., 14 Cal.2d 272, 283-84 (1939), the exception for medicines was created in 1960, see Gottsdanker, 182 Cal.App.2d at 607, and the exception for pesticides was not recognized until 2001. See Arnold v. Dow Chemical Co., 91 Cal.App.4th 698, 720-21

---

(a) it is not made fraudulently or negligently, and (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.
Klages, 367 A.2d at 362-63.

(2001).[13]  In other words, over a period of sixty-seven years, only three types of products have been expressly excepted from the privity requirement for warranty claims.

It is true that "Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.'" McGary v. City of Portland, 386 F.3d 1259, 1270 (9th Cir. 2004) (quoting Baker v. Cuomo, 58 F.3d 814, 818-19 (2d Cir.1995)).  But, a "demurrer is properly sustainable in an action predicated upon a breach of an implied warranty when lack of privity between plaintiff and defendant is disclosed on the fact of the complaint."  Windham, 109 Cal.App.4th at 1169; Anthony, 25 Cal.App.3d at 448.  These two principles are arguably in conflict in the case at bar.  However, as privity is a state law requirement for a state law cause of action, the Court believes that *Windham* is controlling on this issue.  Both *McGary* and *Baker* involved federal issues, that is, an interpretation of a federal law, see McGary, 386 F.3d at 1269-70 (discussing the American's with Disabilities Act), and an argument that a state statute violated the United States Constitution.  See Baker, 58 F.3d at 816 (constitutionality of state law that prevented incarcerated felons from voting).  Neither *Baker* nor *McGary* dealt with purely state law matters.  The issue before this Court is a pure California law issue – privity for breach of warranty claims.  The rationale behind *McGary* and *Baker* is to encourage development of the law.  If a federal claim were involved, the Court may well reach a different result for this 12(b)(6) motion.  However, the Court is requested to examine and construe purely state law claims.  If Plaintiff's breach of warranty claims had been filed in a California court, a demurrer would have been sustained and the claims dismissed. See Windham, 109 Cal.App.4th at 1169; Anthony, 25 Cal.App.3d at 448.  The Court does not see any reason why the same result should not occur in this case given the lack of federal interest in Plaintiff's state law warranty claims.  Moreover, it appears that Plaintiff is trying to make a products liability claim fit into the shoes of breach of warranty causes of action.  Accordingly,

---

[13] *Arnold* has only been cited by one other case, *Windham*, as an exception to the privity requirement for warranty claims.  The other exceptions were established prior to the recognition of strict products liability. Windham, 109 Cal.App.4th at 1169 n.7.

Plaintiff's breach of express and implied warranty claims are dismissed without leave to amend on the basis that no privity exists between Taser and Sanders/Plaintiff.  See Windham, 109 Cal.App.4th at 1169; All West, 64 Cal.App.4th at 725; Anthony, 25 Cal.App.3d at 448.


## _____ **CONCLUSION**

The City/Chief Dyer and Taser have filed separate motions to dismiss.  With respect to the City and Chief Dyer, these Defendants' motion is limited to attacking Plaintiff's Fifth and Eleventh Causes of Action, which allege direct negligence against Chief Dyer and Does and vicarious liability against the City.  The City and Dyer argue that dismissal of these claims is appropriate because there is a fatal variance between Plaintiff's notice of claim and the current allegations.  These Defendants also argue that no statute imposes a duty on the City or Chief Dyer.  The City and Chief Dyer are partially correct.  The Fifth Cause of Action alleges negligence against Chief Dyer and Doe officers in the procurement of tasers, see SAC at ¶¶ 30, 31, 33, 34, 35, failure to investigate claims of discrimination, see SAC at ¶¶ 32(b) & (c), 40, 43, 47, failure to use ordinary care in subduing and repeatedly tazing Sanders, see SAC at ¶ 38, failure to properly treat Sanders post-tazing, see SAC at ¶¶ 36, 37, and failure to properly hire, retain, supervise, and discipline police officers.  See SAC at ¶¶ 32(a), 39, 41, 42, 44.  In a prior ruling, the Court relied on *White v. Superior Court*, 225 Cal.App.3d 1505, 1510-11 (1990), to hold that claims of negligent hiring, training, supervision, and discipline were adequately reflected in the notice of claim.

With respect to the claim of failure to properly treat Sanders post-tazing, the Court believes that this claim is adequately reflected in the notice of claim.  By alleging that the officers knew or should have known that the tazing would severely affect Sanders, the conduct of the officers immediately before, during and after the tazing is at issue.  The City could reasonably be expected to investigate the conduct of the officers after the tazing.  Thus, dismissal of claims in paragraphs 36 and 37 will be denied.

With respect to the negligent procurement claim, the Court does not find that this claim is adequately reflected in the notice of claim.  The decision to even procure tasers is clearly an administrative decision that pre-dates the tazing of Sanders.  Although the City may reasonably be expected to investigate the conduct of the officers for the period immediately before, during and after the tazing of Sanders, it is unreasonable to expect the City to investigate back in time, especially given the minimalistic notice of claim, the decision to even procure tasers.  This claim is an inappropriate shift in allegations and dismissal without leave to amend of this claim, found at paragraphs 30, 31, 33, 34, 35, will be granted.

With respect to negligent failure to investigate claims of discrimination, the Court harbors doubt as to whether this is an independent negligence claim or is actually a method of proving negligent hiring, retention, and discipline.  To the extent that the claim is a separate and independent claim for negligence, the claim is similar to negligent procurement claim in that it represents an improper shift in allegations.  The Court does not see how the City could reasonably be expected to investigate a claim of failure to investigate allegations of racism given the notice of claim in this case.  However, the Court finds it more likely that Plaintiff is attempting to use a failure to investigate discrimination as a method of showing negligent supervision, hiring, and retention.  To the extent that failure to investigate claims of discrimination is a method of showing negligent hiring, retention, and discipline, dismissal for non-compliance with the tort claims act is inappropriate.

Nevertheless, claims of negligent hiring, retention, training, supervision, and discipline made against the entity or the Police Chief are claims for the direct acts of the entity.  As such, Plaintiff was required to identify a statute that imposes this duty on the entity.  This same issue arose in the course of the City's first motion to dismiss, and the Plaintiff could only identify California Government Code § 815.2, which is not applicable as that statute deals with vicarious liability.  Plaintiff still has not identified a statute.  Accordingly, dismissal of the Plaintiff's negligent hiring, retention, training, supervision, and discipline, and as applicable Plaintiff's

failure to investigate discrimination claim, against the Chief Dyer found in paragraphs 32, 39, 40, 41, 42, 43, 44 and 47 is dismissed without leave to amend.

In arguing that the entire Fifth Cause of Action should be dismissed against Chief Dyer, the City and Chief Dyer rely on a case that involved only a claim of negligent hiring, retention, training, supervision, and discipline against the police chief. The *Munoz* decision did not have allegations that the Police Chief actually shot or participated in the shooting in that case. Actual participation in the tazing or post-tazing care of Sanders seems more akin to conduct as a police officer as opposed to conduct as the Chief of Police. The City and Chief Dyer have not cited a case that states every act by the Police Chief is the equivalent of the City. For now, the Court will not dismiss the claims against Chief Dyer found in paragraphs 36, 37, and 38.

Because the potentially viable claims in the Fifth Cause of Action remain, Plaintiff's Eleventh Cause of Action for vicarious liability will not be dismissed.

With respect to Taser's motion, Taser argues that dismissal of the wrongful death cause of action is appropriate because Taser owed no duty to Sanders. However, as a manufacturer of a product, Taser owes a duty of reasonable care to all persons who are within the range of potential danger. The allegations in the complaint are sufficient to show that Taser as a manufacturer owed a duty of care to Sanders. Dismissal of the First Cause of Action will be denied.

With respect to Plaintiff's claim of strict products liability in the Sixth Cause of Action, Taser argues that dismissal is appropriate because there are no allegations that the taser is inherently dangerous or an ultrahazardous product and because there are insufficient allegations that a defect in the Taser caused harm to Sanders or Plaintiff. However, it is unnecessary for Plaintiff to allege that tasers are ultrahazardous. Rather, Plaintiff need only allege that Taser's product was defective, which Plaintiff does. With respect to causation, the allegations are that tasers are defective in that they cause death, the medical community has real concerns over the susceptibility of certain persons to adverse reactions from tazing, that Sanders was repeatedly tased, had to be placed on a gurney, and then stopped breathing. These allegations are sufficient

for purposes of Rule 12(b)(6) to support a conclusion that the defective taser was a substantial factor in causing harm to Sanders.  The Sixth Cause of Action will not be dismissed.

Finally, with respect to the Seventh and Eighth Causes of Action for breach of implied and express warranties, Taser argues that dismissal is appropriate because there is no privity between Taser and Sanders/Plaintiff.  Plaintiff acknowledges privity is a general requirement for warranty claims but argues that privity is not required because tasers are like medicines and Plaintiff is alleging a novel legal theory.  However, the allegations in the complaint do not support the argument that the barbs of the taser are meant to penetrate the human body.  Further, a taser is not meant to be directly ingested or introduced into the body like a foodstuff or medicine.  In short, the taser is neither food nor medicine.  Although Plaintiff may be arguing a novel legal theory, California law holds that a demurrer is properly sustained when a complaint shows a lack of privity.  Since this is purely a state law issue, the Court does not see the utility in entertaining a state law claim that would have been dismissed if it had been brought in state court.  Accordingly, since Sanders and Plaintiff were not in privity with Taser, dismissal of the Seventh and Eighth claims without leave to amend is appropriate.[14]

Accordingly, IT IS HEREBY ORDERED that:

1.    The City and Chief Dyer's motion to dismiss the negligence claims against Chief Dyer in the Fifth Cause of Action is DENIED with respect to the allegations in paragraphs 36, 37, and 38, but GRANTED without leave to amend as to all other allegations against Chief Dyer in the Fifth Cause of Action;

2.    The City and Chief Dyer's motion to dismiss the Eleventh Cause of Action is DENIED;

---

[14]In its motion to dismiss, Taser indicates that it seeks dismissal of the Ninth Cause of Action for negligent misrepresentation.  However, in Taser's points and authorities, Taser does not make any arguments in relation to the Ninth Cause of Action.  Instead, Taser focuses on the First, Sixth, Seventh and Eighth Causes of Action.  As Taser has not developed an argument regarding the Ninth Cause of Action, the Court expresses no opinion on the adequacy of that claim.

3.      Taser's motion to dismiss the First Cause of Action is DENIED;

4.      Taser's motion to dismiss the Sixth Cause of Action is DENIED;

5.      Taser's motion to dismiss the Seventh Cause of Action is GRANTED without leave to amend;

6.      Taser's motion to dismiss the Eighth Cause of Action is GRANTED without leave to amend; and

7.      Defendants are to file an answer to Plaintiff's second amended complaint within 10 days of service of this order.

IT IS SO ORDERED.

**Dated:    July 3, 2006**                              **/s/ Anthony W. Ishii**
0m8i78                                          UNITED STATES DISTRICT JUDGE

38