1  DENNIS A. MARSHALL
     County Counsel
2  BRUCE B. JOHNSON, JR.
     Senior Deputy County Counsel – SBN 142968
3  FRESNO COUNTY COUNSEL
   2220 Tulare Street, 5th Floor
4  Fresno, California  93721

5
   Telephone: (559) 488-3479
6  Facsimile:  (559) 488-1900

7  Attorneys for Defendant, COUNTY OF FRESNO

8
                    UNITED STATES DISTRICT COURT
9
                    EASTERN DISTRICT OF CALIFORNIA
10

11 
   LAVETTE SANDERS,                         Case No. 1:05 cv 00469 AWI SMS
12
                              Plaintiff,    DECLARATION OF BRUCE B. JOHNSON
13                                          IN SUPPORT OF COUNTY OF FRESNO'S
                   Vs.                      MOTION FOR SUMMARY JUDGMENT
14                                          OR SUMMARY ADJUDICATION
15 CITY OF FRESNO, et al.,

16                            Defendants.    Date: January 28, 2008
                                            Time: 1:30 p.m.
17                                          Courtroom: 2

18
   I, BRUCE B. JOHNSON, declare:
19
        1.      I am an attorney licensed to practice law in the State of California and am the
20
   attorney of record for the defendant, County of Fresno, in the above-referenced action.  I have
21
   personal knowledge of the matters stated herein and if called upon to testify concerning same,
22
   could do so competently.
23
        2.      Attached as Exhibit "A" is a true and correct copy of requests for admission
24
   which the County propounded upon plaintiff.  Attached as Exhibit "B" is a true and correct copy
25
   of plaintiff's responses to the requests for admission.  Attached as Exhibit "C" is a true and
26
   correct copy of plaintiff's amended responses to the requests for admission.
27
        3.      I personally attended the deposition of City of Fresno police officer, Beau Burger.
28
   Attached as Exhibit "D" is a true and correct copy of the transcript of his deposition.

                                             1

4.    I personally attended the deposition of plaintiff, LaVette Sanders. Attached as Exhibit "E" is a true and correct copy of the transcript of her deposition.

5.    As of the time of this writing, I am unable to locate one of my correspondence files pertinent to this suit. However, it is my recollection that in mid-2005, I wrote a letter to plaintiff's attorney, Waukeen McCoy, requesting that plaintiff dismiss the County from this suit. As I recall, I enclosed with the letter the Watch Commander's logs (attached as an exhibit to the declaration of Rick Pursell, filed concurrently herewith), and an article apparently written by Mr. McCoy's firm, assigning blame to the "Fresno Police Department", or words to that effect. I also educated Mr. McCoy that the Sheriff's Department's peace officers are generally clad in light brown uniforms, whereas the City of Fresno's peace officers are generally clad in navy blue uniforms. Plaintiff refused to dismiss the County from this suit, notwithstanding that the allegations in the complaint are that the County participated in the subduing of plaintiff's decedent.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 12th day of December, 2007, in Fresno, California.



Bruce B. Johnson, Declarant

Johnson Dec.

EXHIBIT "A"

1   DENNIS A. MARSHALL
      County Counsel
2   BRUCE B. JOHNSON, JR.
      Senior Deputy County Counsel – SBN 142968
3   FRESNO COUNTY COUNSEL
    2220 Tulare Street, 5th Floor
4   Fresno, California   93721

5
    Telephone:  (559) 488-3479
6   Facsimile:    (559) 488-1900

7   Attorneys for Defendant, COUNTY OF FRESNO

8
                    UNITED STATES DISTRICT COURT
9
                    EASTERN DISTRICT OF CALIFORNIA
10

11  LAVETTE SANDERS,                    Case No. 1:05 cv 00469 AWI SMS
12
                            Plaintiff,      REQUESTS FOR ADMISSION
13
14              Vs.

15  CITY OF FRESNO, et al.,

16                          Defendants.

17
    PROPOUNDING PARTY:    Defendant, COUNTY OF FRESNO
18
    RESPONDING PARTY:     Plaintiff, LAVETTE SANDERS
19
20  SET NO.:              ONE (1)

21          Requests for Admission, Set No. One, are hereby propounded to plaintiff, LAVETTE

22  SANDERS, who is requested to admit that each of the following facts is true:

23          1.      As of August 19, 2004, you were married to Michael Sanders.

24          2.      As of August 19, 2004, your residential address was 4869 E. Oslin.

25          3.      As of August 19, 2004, Michael Sanders' residential address was 4869 E. Oslin.

26          4.      As of August 19, 2004, your residence at 4869 E. Oslin was located within the

27  incorporated limits of the City of Fresno.

28          5.      As of August 19, 2004, your residence at 4869 E. Oslin was not located within the

    unincorporated area of the County of Fresno.

                                        1

    Req. for Admissions

6.      On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30 a.m., you were present at 4869 E. Oslin.

7.      On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30 a.m., Michael Sanders was present at 4869 E. Oslin.

8.      On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30 a.m., you called a law enforcement agency to report a domestic disturbance at 4869 E. Oslin.

9.      On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30 a.m., peace officers arrived at 4869 E. Oslin, in response to your report of a domestic disturbance.

10.      On August 20, 2004, all of the peace officers who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by the City of Fresno.

11.      You have no information that on August 20, 2004, any of the peace officers who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by any agency other than the City of Fresno.

12.      On August 20, 2004, none of the peace officers who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by the County of Fresno.

13.      You have no information that on August 20, 2004, any of the peace officers who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by the County of Fresno.

14.      On August 20, 2004, none of the peace officers who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were wearing any uniforms which were brown with green and gold trim.

15.      As of August 20, 2004, you were employed by the County of Fresno.

16.      Other than you, at no time on August 20, 2004, between the hours of 12:01 a.m. and 4:30 a.m., was any employee of County of Fresno physically present on any portion of the premises at 4869 E. Oslin.

17.  You have no information that other than you, at any on August 20, 2004, between the hours of 12:01 a.m. and 4:30 a.m., any employee of the County of Fresno was physically present on any portion of the premises at 4869 E. Oslin.

18.  The County of Fresno did not direct any of the actions of any of the persons present at 4869 E. Oslin, on August 20, 2004, between the hours of 12:01 a.m. and 4:30 a.m.

19.  You have no information that the County of Fresno directed any of the actions of any of the persons present at 4869 E. Oslin, on August 20, 2004, between the hours of 12:01 a.m. and 4:30 a.m.

20.  As of August 20, 2004, no peace officer employed by the County of Fresno was equipped by County of Fresno with a Taser.

21.  You have no information that as of August 20, 2004, any peace officer employed by the County of Fresno was equipped by County of Fresno with a Taser.

22.  Other than you, no employee of County of Fresno physically touched Michael Sanders on August 20, 2004, at any time between the hours of 12:01 a.m. and 4:30 a.m.

23.  You have no information that other than you, any employee of County of Fresno physically touched Michael Sanders on August 20, 2004, at any time between the hours of 12:01 a.m. and 4:30 a.m.

24.  As of August 20, 2004, County of Fresno had no control over who City of Fresno employs as peace officers.

25.  As of August 20, 2004, County of Fresno has no control over training afforded City of Fresno peace officers.

26.  As of August 20, 2004, County of Fresno had no control over policies adopted by the City of Fresno Police Department.

27.  As of August 20, 2004, County of Fresno had no control over the types of equipment City of Fresno issued to its peace officers.

///
///
///

Req. for Admissions

1    28.     County of Fresno did not cause Michael Sanders' death on August 20, 2004.

2   Dated: December 6, 2005                    DENNIS A. MARSHALL

3                                              County Counsel

4

5

6

7                              By:     BRUCE B. JOHNSON, Senior Deputy
                                       Attorneys for Defendant County of Fresno
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Req. for Admissions

## PROOF OF SERVICE

### *SANDERS v. CITY OF FRESNO et al.*
**United States District Court 1:05 cv 00469 AWI SMS**

I, URSULA BUFE, declare as follows:

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed at the Fresno County Counsel's Office, 2220 Tulare Street, Fifth Floor, Fresno, California, 93721.

On December 6, 2005, I served **copies** of the within document

### Requests for Admission, Set One (Plaintiff)

on the interested party(ies) in said action addressed as follows:

| | |
|---|---|
| **WAUKEEN Q. McCOY**<br>**LAW OFFICES OF WAUKEEN Q. McCOY**<br>**703 MARKET STREET, SUITE 1407**<br>**SAN FRANCISCO CA 94103** | Counsel for Plaintiffs |
| **BRUCE D. PRAET, ESQ.**<br>**FERGUSON PRAET & SHERMAN**<br>**1631 E 18TH ST**<br>**SANTA ANA, CA 92705** | Counsel for City of Fresno<br>and Jerry Dyer |
| **MILDRED K. O'LINN**<br>**MANNING & MARDER, KASS,**<br>**ELLROD, RAMIREZ**<br>**23RD FLOOR AT FIGUEROA TOWER**<br>**660 S. FIGUEROA STREET**<br>**LOS ANGELES, CA 90017** | Counsel for Taser International, Inc. |

☑ by placing the document(s) listed above for mailing in the United States mail at Fresno, California, in accordance with my employer's ordinary practice for collection and processing of mail, and addressed as set forth above.

☐ by transmitting via facsimile the above listed document(s) to the fax number(s) set forth above on this date before 5:00 p.m. pacific standard time.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth above.

☐ via electronic filing. The above party/ies is/are registered with the United States District Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

☐ by placing the document(s) listed above in a sealed envelope, and placing the same for overnight delivery by California Overnight at Fresno, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 6, 2005, at Fresno, California.

_____
URSULA BUFE

**EXHIBIT "B"**

WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
DOW W. PATTEN, ESQ. of Counsel (SBN: 135931)
LAW OFFICES OF WAUKEEN Q. McCOY
703 Market Street, Suite 1407
San Francisco, California 94103
Telephone (415) 675-7705
Facsimile (415) 675-2530

Attorney for Plaintiff
Lavette Sanders

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LAVETTE SANDERS, individually and as guardian ad litem for the estate of MICHAEL SANDERS, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF FRESNO, a municipality; COUNTY OF FRESNO; TASER INTERNATIONAL, INC. a corporation doing business in California; JERRY DYER, an individual; and DOES 1 through 10, inclusive <br><br><br> Defendants. | Case No. 1:05-CV-00469-AWI-SMS <br><br> **PLAINTIFF'S ANSWERS TO DEFENDANT COUNTY OF FRESNO'S FIRST SET OF REQUESTS FOR ADMISSIONS** |

PROPOUNDING PARTY:     Defendant COUNTY OF FRESNO.

RESPONDING PARTY:      Plaintiff LAVETTE SANDERS

SET NUMBER:            ONE

Pursuant to Federal Rules of Civil Procedure Rule 36, Plaintiff LAVETTE SANDERS ("Plaintiff") hereby responds to Defendant COUNTY OF FRESNO's ("COUNTY")'s Requests for Admissions, Set One ("Requests").

## PLAINTIFF'S PRELIMINARY STATEMENT

Plaintiff has not completed his investigation relating to this action, has not completed discovery in this action, and has not completed preparation for trial. As discovery proceeds, facts, information, evidence, documents and things may be discovered which are not set forth in these responses, but which may have been responsive to these Requests or may have affected Plaintiff's responses. The following responses are based on Plaintiff's best knowledge at this time. Furthermore, these responses were prepared based on Plaintiff's good faith interpretation and understanding of the Requests, and are subject to correction for inadvertent errors or omissions, if any.

Plaintiff reserves the right to refer to, conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses. In addition, Plaintiff assumes no obligation to voluntarily supplement or amend these responses to reflect information, evidence, documents or things discovered following service of these responses. Nevertheless, these responses are given without prejudice to subsequent revision or supplementation, including objections, based upon any information, evidence and documentation which hereinafter may be discovered.

## GENERAL OBJECTIONS

1. Plaintiff objects to County's First Requests as a whole, and to each Request contained therein, to the extent they seek information protected from disclosure by the attorney-client

1   privilege, the attorney work product doctrine, and/or any other applicable privilege or
2   immunity.

3   2.    Plaintiff objects to Defendant's Requests as a whole, and to each Request contained
4         therein, to the extent that they seek to require Plaintiff to provide information other than
5         that which is within her personal knowledge or which may be obtained through a
6         reasonably diligent search of her personal records.

7   3.    Plaintiff objects to Defendant's Requests as a whole, and to each Request contained
8         therein, to the extent that they seek documents which are not relevant to the subject matter
9         of this litigation and are not reasonably calculated to lead to the discovery of admissible
10        evidence.

11  4.    Plaintiff objects to Defendant's Requests as a whole, and to each Request contained
12        therein, to the extent that they are overly broad as to time and scope and/or require Plaintiff
13        to make an unreasonable and unduly burdensome investigation.

14  5.    Plaintiff objects to Defendant's Requests as a whole, and to each Request contained
15        therein, to the extent that they seek information, the disclosure of which would constitute
16        an unwarranted invasion of the affected persons' rights of privacy and/or confidentiality.

17        All General Objections are incorporated by reference into each response as though set
18  forth in full therein. Subject to and without waiving these general objections, and subject to and
19  without waiving the specific objections below, Plaintiff responds as follows in accordance with
20  Plaintiff's understanding of the fair meaning of those requests:

22        **RESPONSE TO REQUESTS FOR ADMISSIONS**

24  REQUEST NO. 1:  As of August 19, 2004, you were married to Michael Sanders.

26  RESPONSE: Admit.

27  REQUEST NO. 2:  As of August 19, 2004, your residential address was 4869 E. Oslin.

28  RESPONSE: Admit.

1   REQUEST NO. 3: As of August 19, 2004, Michael Sanders' residential address was 4869 E.

2   Oslin.

3   RESPONSE: Admit.

4   REQUEST NO. 4: As of August 19, 2004, your residence at 4869 E. Oslin was located within

5   the incorporated limits of the City of Fresno.

6   RESPONSE: Admit.

7   REQUEST NO. 5: As of August 19, 2004, your residence at 4869 E. Oslin was not located

8   within the unincorporated area of the County of Fresno.

9   RESPONSE: Admit.

10   REQUEST NO. 6: On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30

11   a.m., you were present at 4869 E. Oslin.

12   RESPONSE: Admit.

13   REQUEST NO. 7: On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30

14   a.m., Michael Sanders was present at 4869 E. Oslin.

15   RESPONSE: Admit.

16   REQUEST NO. 8: On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30

17   a.m., you called a law enforcement agency to report a domestic disturbance at 4869 E. Oslin.

18   RESPONSE: Denied.

19   REQUEST NO. 9: On August 20, 2004, at some point between the hours of 12:01 a.m. and 4:30

20   a.m., peace officers arrived at 4869 E. Oslin, in response to your report of a domestic

21   disturbance.

22   RESPONSE: Plaintiff objects to this request as vague and ambiguous as to the term "peace

23   officers". Without waiving the forgoing, Plaintiff denies reporting a domestic disturbance.

24   Plaintiff admits that law enforcement personnel were present during the time period at the

25   residence referenced in the request.

26   REQUEST NO. 10: On August 20, 2004, all of the police officers who arrived at 4869 E. Oslin

27   between the hours of 12:01 a.m. and 4:30 a.m. were employed by the City of Fresno.

28

1  RESPONSE: Denied upon lack of information. Plaintiff was taken to a remote part of the

2  premises and was not able to see all persons present at the premises on the date and time

3  referenced in the request.

4  REQUEST NO. 11:  You have no information that on August 20, 2004, any of the police officers

5  who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by

6  any other agency than the City of Fresno.

7  RESPONSE: Plaintiff is unable to admit or deny the request. Although Plaintiff has made

8  reasonable inquiry and that the information known or readily obtainable by Plaintiff is

9  insufficient to enable Plaintiff to admit or deny.   Plaintiff is presently unaware of the identities

10  and employers of all persons present at the premises on the date and time indicated in the request

11  due to being detained in a remote portion of the premises.

12  REQUEST NO. 12:  On August 20, 2004, none of the peace officers who arrived at 4869 E.

13  Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by the County of Fresno.

14  RESPONSE: Denied upon lack of information. Plaintiff did not see all persons present on the

15  date and time referenced in the request.

16  REQUEST NO. 13:  You have no information that on August 20, 2004, any of the peace officers

17  who arrived at 4869 E. Oslin between the hours of 12:01 a.m. and 4:30 a.m. were employed by

18  the County of Fresno.

19  RESPONSE: Plaintiff is unable to admit or deny the request. Although Plaintiff has made

20  reasonable inquiry and that the information known or readily obtainable by Plaintiff is

21  insufficient to enable Plaintiff to admit or deny.   Plaintiff is presently unaware of the identities

22  and employers of all persons present at the premises on the date and time indicated in the request

23  due to being detained in a remote portion of the premises.

24  REQUEST NO. 14:  On August 20, 2004, none of the peace officers who arrived at 4869 E.

25  Oslin between the hours of 12:01 a.m. and 4:30 a.m. were wearing any uniforms which were

26  brown with green and gold trim.

27  RESPONSE: Denied upon lack of information. Plaintiff did not see all persons present on the

28  date and time referenced in the request.

1 | REQUEST NO. 15: As of August 20, 2004, you were employed by the County of Fresno.

2 | RESPONSE: Admit.

3 | REQUEST NO. 16: Other than you, at no time on August 20, 2004, between the hours of 12:01

4 | a.m. and 4:30 a.m., was any employee of County of Fresno physically present on any portion of

5 | the premises at 4869 E. Oslin.

6 | RESPONSE: Denied upon lack of information. Many persons were present at the date and time

7 | referenced in the request. Plaintiff did not see all persons due to being detained in a remote

8 | portion of the premises.

9 | REQUEST NO. 17: You have no information that other than you, at any [sic] on August 20,

10 | 2004, between the hours of 12:01 a.m. and 4:30 a.m., any employee of County of Fresno was

11 | physically present on any portion of the premises at 4869 E. Oslin.

12 | RESPONSE: Plaintiff is unable to admit or deny the request. Although Plaintiff has made

13 | reasonable inquiry and that the information known or readily obtainable by Plaintiff is

14 | insufficient to enable Plaintiff to admit or deny. Many persons were present at the date and time

15 | referenced in the request. Plaintiff did not see all persons due to being detained in a remote

16 | portion of the premises.

17 | REQUEST NO. 18: The County of Fresno did not direct any of the actions of any of the persons

18 | present at 4869 E. Oslin, on August 20, 2004, between the hours of 12:01 a.m. and 4:30 a.m.

19 | RESPONSE: Denied upon lack of information.

20 | REQUEST NO. 19: You have no information that the county of Fresno directed any of the

21 | actions of any of the persons present at 4869 E. Oslin, on August 20, 2004, between the hours of

22 | 12:01 a.m. and 4:30 a.m.

23 | RESPONSE: Plaintiff is unable to admit or deny the request. Although Plaintiff has made

24 | reasonable inquiry and that the information known or readily obtainable by Plaintiff is

25 | insufficient to enable Plaintiff to admit or deny.

26 | REQUEST NO. 20: As of August 20, 2004, no peace officer employed by the county of Fresno

27 | was equipped by the County of Fresno with a Taser.

28 | RESPONSE: Denied upon lack of information.

1  REQUEST NO. 21: You have no information that as of August 20, 2004, any peace officer
2  employed by the County of Fresno was equipped by County of Fresno with a Taser.
3  RESPONSE: Plaintiff objects to the request on the basis that it is overly broad, not capable of
4  precise answer, and lacks foundation. Without waiving the forgoing, Plaintiff responds that she
5  does not know what weaponry the County of Fresno equips its personnel, if any. Plaintiff is
6  unable to admit or deny the request. Although Plaintiff has made reasonable inquiry and that the
7  information known or readily obtainable by Plaintiff is insufficient to enable Plaintiff to admit or
8  deny.
9  REQUEST NO. 22: Other than you, no employee of County of Fresno physically touched
10  Michael Sanders on August 20, 2004 at any time between the hours of 12:01 a.m. and 4:30 a.m.
11  RESPONSE: Denied as to whether Plaintiff touched Michael Sanders during the date and time
12  referenced in the request. Further denied upon lack of information as Plaintiff did not see all
13  persons due to being detained in a remote portion of the premises.
14  REQUEST NO. 23: You have no information that other than you, any employee of County of
15  Fresno physically touched Michael Sanders on August 20, 2004 at any time between the hours of
16  12:01 a.m., and 4:30 a.m.
17  RESPONSE: Denied as to whether Plaintiff touched Michael Sanders during the date and time
18  referenced in the request. Admit that Plaintiff did not see all persons due to being detained in a
19  remote portion of the premises. As to the remainder, Plaintiff is unable to admit or deny the
20  request. Although Plaintiff has made reasonable inquiry and that the information known or
21  readily obtainable by Plaintiff is insufficient to enable Plaintiff to admit or deny.
22  REQUEST NO. 24: As of August 20, 2004, county of Fresno had no control over who City of
23  Fresno employs as peace officers.
24  RESPONSE: Denied upon lack of information.
25  REQUEST NO. 25: As of August 20, 2004, County of Fresno has no control over training
26  afforded City of Fresno peace officers.
27  RESPONSE: Denied upon lack of information.
28

1   REQUEST NO. 26: As of August 20, 2004, County of Fresno had no control over policies

2   adopted by the City of Fresno Police Department.

3   RESPONSE: Plaintiff objects to this request as vague and ambiguous as to "control". Without

4   waiving the forgoing, Plaintiff responds: Denied upon lack of information.

5   REQUEST NO. 27: As of August 20, 2004, County of Fresno had no control over the types of

6   equipment City of Fresno issued to its police officers.

7   RESPONSE: Plaintiff objects to this request as vague and ambiguous as to "control". Without

8   waiving the forgoing, Plaintiff responds: Denied upon lack of information.

9   REQUEST NO. 28: County of Fresno did not cause Michael Sanders' death on August 20,

10   2004.

11   RESPONSE: Plaintiff objects to this request as vague and ambiguous as to "cause". Without

12   waiving the forgoing, Plaintiff responds: Denied upon lack of information.

18   Dated: _January 9, 2006_

LAW OFFICES OF WAUKEEN McCOY
Dow. W. Patten, Esq. of Counsel

EXHIBIT "C"

WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
LAW OFFICES OF WAUKEEN Q. McCOY
703 Market Street, Ste. 1407
San Francisco, California 94103
Telephone (415) 675-7705
Facsimile (415) 675-2530

Attorney for Plaintiff;

UNITED STATES DISTRICT COURT

EASTERN DIVISION

LAVETTE SANDERS, individually and for
the ESTATE OF MICHAEL SANDERS,

                Plaintiffs,

      vs.

CITY OF FRESNO, a municipality; TASER
INTERNATIONAL INC., a corporation doing
business in California; JERRY DYER, an
individual; and DOES 1 through 10, inclusive,

                Defendants.

) Case No. 1:05-CV-00469-AWI-SMS
)
) **PLAINTIFF'S AMENDED RESPONSES**
) **FOR ADMISSIONS, SET ONE TO**
) **DEFENDANT COUNTY OF FRESNO**
)
)
)
)
)
)
)
)
)
)
)
)
)
)

PROPOUNDING PARTY:   Defendant COUNTY OF FRESNO

RESPONDING PARTY:    Plaintiff LAVETTE SANDERS

SET:  No. 1

      It must be noted that Plaintiff has not yet fully completed his investigation of the facts

relating to this case, has not completed discovery, and has not completed its preparation for trial.

      All of the responses contained herein are based only upon such information and

documents as are presently available to and specifically known to Plaintiff and disclose only

those contentions which presently occur to Plaintiff.

1

It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the answers set forth herein.

The following response are provided without prejudice to Plaintiff's right to produce evidence of any subsequently discovered fact which Plaintiff may later recall. Plaintiff accordingly reserves the right to change any and all answers herein as additional facts are ascertained, analysis are conducted, legal research is completed, and contentions are made. The responses contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as are presently known, but should in no way be to the prejudice of Plaintiff in relation to further discovery, research or analysis.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO.13:**

A reasonable inquiry concerning the matter in the particular request has been made, and the information currently known or readily obtainable to Plaintiff is insufficient to enable Plaintiff to admit or deny the matter. Should Plaintiff obtain information sufficient to admit or deny the request she will update her response to this request. Discovery is continuing and ongoing.

Dated: January 3, 2007

LAW OFFICES OF WAUKEEN McCOY

By_____

WAUKEEN Q. McCOY
ATTORNEY FOR PLAINTIFF
LAVETTE SANDERS, individually, and on behalf of THE ESTATE OF MICHAEL SANDERS

2

EXHIBIT "D"

## PROOF OF SERVICE

I declare:

My business address is 703 Market St., Ste. 1407, San Francisco, CA. I am over the age of 18 and am not a party to this action.

I am familiar with the business practices at my place of business for collection and processing of mail. Mail collected and processed is deposited with the U.S. Postal Service that same day in the ordinary course of business.

On January 4, 2007, I caused to be served:

**PLAINTIFF'S AMENDED RESPONSES FOR ADMISSION, SET ONE DEFENDANT COUNTY OF FRESNO**

on the party(ies) listed below, addressed as follows:

**Bruce Bradford Johnson, Jr.**
Fresno County Counsel
2220 Tulare Street
Suite 500
Fresno, CA 93721
559-488-3479
559-488-1900 (fax)
BJohnson@co.fresno.ca.us

___X___        **By facsimile machine (FAX)** by personally transmitting a true copy thereof via an electronic facsimile machine between the hours of 9:00 a.m. and 5:00 p.m.

___x___        **By first class mail** by depositing a sealed envelope in the United States mail at San Francisco, California, with postage fully prepaid.

_____        **By hand delivery**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 4, 2007 at San Francisco, California.

By: _____
        Mark D. Roberts

CERTIFIED
COPY

1            UNITED STATES DISTRICT COURT

2                 EASTERN DIVISION

3

4   LAVETTE SANDERS, individually    )
    and as Guardian Ad Litem for     )
5   the Estate of MICHAEL L.         )
    SANDERS,                         )
6                                    )
                 Plaintiffs,         )
7                                    )
         vs.                         )  No. 05-0469 AWI
8                                    )
    CITY OF FRESNO, a                )
9   municipality COUNTY OF FRESNO,   )
    a municipality; TASER            )
10  INTERNATIONAL, INC., a           )
    corporation doing business in    )
11  California; JERRY DYER, an       )
    individual; RICHARD PAUL BROWN,  )
12  an individual; ELOY ESCARANEO,   )
    an individual; JESSEE HERRING,   )
13  an individual; BEAU BURGER, an   )
    individual, and DOES 5 through   )
14  10, inclusive,                   )
                                     )
15               Defendants.         )
                                     )
16  _____

17

18          DEPOSITION OF BEAU BURGER

19              Fresno, California

20        Wednesday, February 21, 2007

21

22

23  Reported by:

24  RENEE C. CLARK
    CSR No. 8410
25  Job No. 73302

1    remember afterwards whether or not he was alive or dead?

2         MR. PRAET:  Vague as to time.

3    BY MR. McCOY:

4         Q.  At some point after you had contact with

5    Mr. Sanders was he still alive or was he dead?

6         A.  He was pronounced deceased.

7         Q.  Do you recall what time that was?

8         A.  I cannot recall.

9         Q.  Do you recall besides yourself who else had

10   contact with Mr. Sanders before his death on that

11   particular night?

12        A.  I do.

13        Q.  And could you give me the names of the

14   individuals that you can recall today?

15        A.  Sgt. Brown, Officer Herring, Officer Escarano.

16        Q.  Escarano?

17        A.  Correct.  And Officer Figueroa.

18        Q.  Now, you were at the residence the entire time

19   that the incident took place, correct?

20        A.  Assuming -- which incident?

21        MR. PRAET:  Why don't you explain the

22   parameters.  From the time the police first got there

23   or --

24        MR. McCOY:  Yeah.

25   BY MR. McCOY:

1     Q.  Did you ever leave the premises, the location

2 which you just described that you were at, the residence

3 on 4800 Oslin, did you ever leave that residence, sir?

4     A.  If that was the correct residence, yes.

5     Q.  Well, how long were you at the residence before

6 you left

7     A.  Approximate one hour.

8     Q.  So during that one-hour period of time were you

9 in one place or were you at a different place on that

10 location?  In other words, were you in the house some of

11 the time or outside some of the time or do you recall?

12     A.  Both.

13     Q.  Now, what was your status at the time you

14 arrived at the Oslin address in terms of employment?

15     A.  A Police Officer.

16     Q.  Were you a Patrol Officer?

17     A.  Correct.

18     Q.  Who were you working for at the time?

19     A.  City of Fresno.

20     Q.  Let me go back before I continue on with this

21 line of questioning.  Now, you indicated that Sgt. Brown,

22 Officer Herring, Officer Escarano and Officer Figueroa

23 was present during the time that you had contact with

24 Mr. Sanders; is that right?

25     A.  Correct.

Esquire Deposition Services
800.770.3363

1      Q.   Do you recall any other individuals that were

2 also present at that time during the time that you were

3 there?

4      A.   There were no other officers to my knowledge.

5      Q.   Were there any other individuals present besides

6 the officers that you indicated to your knowledge during

7 the time that you were there?

8      A.   Yes.

9      Q.   Do you know all the individuals who were there

10 at that time?

11      A.   I do not.

12      Q.   Do you know if they were County officials, City

13 officials or either or both?

14      A.   I do not.

15      Q.   So it's possible that there could have been some

16 County employees present during that time?

17           MR. JOHNSON:   Calls for speculation.

18           MR. PRAET:   When you say other people, are you

19 talking about other officials or are you including the

20 Plaintiff and Mr. Sanders?

21           MR. McCOY:   I'm including anybody and everybody

22 that was there.   I'm asking him about everybody or

23 anybody else who was there.   He named the Officers.   Does

24 he know the -- can he identify anybody else.

25           MR. JOHNSON:   Speculation.

Esquire Deposition Services
800.770.3363

| | |
|---|---|
| 1 | MR. PRAET: Were there any other public |
| 2 | officials besides the City of Fresno? |
| 3 | MR. McCOY: I'm asking the questions. |
| 4 | MR. PRAET: I know. I don't want this to go |
| 5 | off -- |
| 6 | MR. McCOY: I'm conducting the deposition. As I |
| 7 | indicated to him earlier, if he doesn't understand the |
| 8 | question, he can ask me. |
| 9 | I'll reframe it or I will make sure that I |
| 10 | clarify and make sure that you understand it, okay? |
| 11 | THE WITNESS: Yes. |
| 12 | BY MR. McCOY: |
| 13 | Q. So do you know whether or not there were any |
| 14 | other City or County employees present on the day that |
| 15 | you were there? |
| 16 | MR. JOHNSON: Compound in the disjunctive. |
| 17 | MR. McCOY: It's noted. |
| 18 | As I indicated, the attorneys may make |
| 19 | objections, but you could go ahead and answer the |
| 20 | question. |
| 21 | THE WITNESS: Not to my knowledge for City or |
| 22 | County. |
| 23 | BY MR. McCOY: |
| 24 | Q. Who else was there that you can recall besides |
| 25 | the Officers that you named? |

18

**EXHIBIT "E"**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-o0o-

LAVETTE SANDERS, individually and as )
guardian ad litem for the state of )
MICHAEL L. SANDERS, )
                             )
       Plaintiff, )
                             )
  vs. )Case No.
                             )
CITY OF FRESNO, a municipality; )1:05-CV-00469AWI-SMS
COUNTY OF FRESNO, a municipality; )
TASER INTERNATIONAL, INC., a )
corporation doing business in California;)
JERRY DYER, an individual; and DOES )
1-10, inclusive, )
                             )
       Defendants. )
_____)
Fresno, California             December 13, 2006

-o0o-

DEPOSITION OF LAVETTE SANDERS

-o0o-

Reported by:
MELISSA PLOOY, CSR
License No. 13068

1320 EAST SHAW AVENUE, SUITE 168
FRESNO, CALIFORNIA 93710
(559) 224-5511 or 1-800-248-6611



| | |
|---|---|
| 1 | Q. Okay. Let's go for the day before. |
| 2 | A. The day before. Okay. |
| 3 | Q. On the day before the incident, was that a |
| 4 | workday? |
| 5 | A. Yes. |
| 6 | Q. And what day of the week was it? |
| 7 | A. It was a Thursday. |
| 8 | Q. Do you remember the date? |
| 9 | A. The 19th of August, 2004. |
| 10 | Q. Okay. And when the incident actually occurred, it |
| 11 | was 2 a.m. on the following morning. So it would have been |
| 12 | the 20th; is that correct? |
| 13 | A. Yes. |
| 14 | Q. You went to work that day? |
| 15 | A. Yes. |
| 16 | Q. And did -- do you know what Michael was doing that |
| 17 | day? |
| 18 | A. Yes. He was painting at the house. |
| 19 | Q. Painting rooms? |
| 20 | A. Uh-huh. |
| 21 | Q. Not artistic-type painting, just wall painting? |
| 22 | A. He was painting our bedroom walls. |
| 23 | Q. Was anybody helping him? |
| 24 | A. Yes. |
| 25 | Q. Who was that? |

CENTRAL VALLEY REPORTERS
FRESNO, CALIFORNIA   (559) 224-5511

1      Q.   Yes.

2      A.   Yes.

3      Q.   What did he do?

4      A.   He told me, "no."  He took the phone and he said,

5   "I'm calling 911," and he called.

6      Q.   Did he tell you why he was going to call 911?

7      A.   No.

8      Q.   Did you ask?

9      A.   I think I said, "What are you calling them for?"

10  Yeah.  It was a statement more than a question.

11     Q.   Okay.  You actually had the phone in your hand?  You

12  were getting ready to call his mother?

13     A.   Uh-huh.

14     Q.   Did he pull the phone from you?

15     A.   Took the phone from me, uh-huh.

16     Q.   Had you started to dial?

17     A.   Had I started to dial his mother?

18     Q.   Yes.

19     A.   I didn't get a chance to, no.

20     Q.   Could you hear what he was saying?  Did you see him

21  actually push the buttons, 911?

22     A.   Yes.

23     Q.   Could you hear him talking to someone?

24     A.   Yeah.

25     Q.   What did he say?

1      A.   I don't really remember right now.

2      Q.   Did it seem to make sense or was he rambling?

3      A.   He was talking.  He was talking fast.  I understood

4  what he said, but I don't really remember his exact words.  So

5  I don't really want to say if I'm not sure.

6      Q.   Do you remember the general nature of what he was

7  saying, if not his exact words?

8      A.   Someone's outside.

9      Q.   To the best of your knowledge, was there any

10  indication that there was someone outside?

11     A.   No.

12     Q.   Was he talking loudly?

13     A.   Yes.

14     Q.   Do you remember anything else about the nature of

15  what he was saying on the phone?

16     A.   I might have to come back to that.  I don't really

17  remember.

18     Q.   Okay.  And you've been doing a great job of

19  recalling things.  And if you think of it, please let me know.

20          Now, you were crying in the background, weren't

21  you?

22     A.   I don't remember I was crying.  I was asking him,

23  "What did you do that for?  What did you call them for?"

24     Q.   Do you remember saying, "Why did you do this to me?"

25     A.   No.

1     Q.    Do you remember saying, "Why did you do that?"

2     A.    Yeah.  I was like, "Why did you call them?  Why did

3  you do that?"  Is what I said.

4     Q.    Were you upset?

5     A.    That he called them?  Yes.

6     Q.    And, obviously, people express being upset a number

7  of ways.  Do you remember if you were crying or were you,

8  like, yelling at him or how were you --

9     A.    Pleading.  "What did you do that for?"  I figured

10  nothing good was going to come out of that.

11     Q.    And, at this point, had he already taken a shower?

12     A.    Yes.

13     Q.    So was he naked?

14     A.    Yes.

15     Q.    Did you ask him to get dressed?

16     A.    After he called and I knew that the police would

17  probably be there, I said, "Why don't you put some clothes

18  on?"  Yes.

19     Q.    And did he?

20     A.    No.

21     Q.    At some point, did you hear a knock at the door?

22     A.    Later on, yes, I did.

23     Q.    Did he yell something about, look at this, like,

24  look at some jewelry, during this conversation while you were

25  waiting for the police?

1   entered the rod-iron door to the porch. They were already

2   right there at the door.

3        Q.   And the rod-iron door, that, presumably, was

4   unlocked?

5        A.   At that time, yeah.

6        Q.   And when you opened the front door, you saw who?

7        A.   A lot of police officers.

8        Q.   They were in uniform?

9        A.   Yes.

10       Q.   And when you say, "a lot," can you give me an

11  estimate of how many?

12       A.   Well, my porch could hold about four, five people

13  there. Four or five. At least that.

14       Q.   And did the police officers ask you if they could

15  come in?

16       A.   What they said is, "We are here" -- "Mr. Sanders, we

17  are here to help you." They didn't ask to come in, no.

18       Q.   They called Michael by name, Mr. Sanders, and they

19  said, "We are here to help you"?

20       A.   I'm not quite sure whether they called him by his

21  name or not. I can't remember that.

22       Q.   And what did Michael say to them?

23       A.   He said, "You're not the police."

24       Q.   Was it obvious to you that they were the police?

25       A.   Obvious to me? Yeah.

CENTRAL VALLEY REPORTERS
FRESNO, CALIFORNIA  (559) 224-5511

1     A.   After we had fallen?

2     Q.   Yes.

3     A.   I don't really recall.  Can we maybe come back to

4 that?  I don't really recall what they said.

5     Q.   Okay.  Can you identify or describe any of the

6 police officers?  I mean, obviously, they were all in uniform.

7 You've said that.  But were they male, female?

8     A.   They were all male and one female.

9     Q.   Did all the officers have tasers out that you could

10 see?

11     A.   The female one didn't.

12     Q.   And when you say you saw the tasers, what did the

13 tasers look like?  Can you describe them?

14     A.   To me, it looked like some sort of gun with yellow

15 on it.

16     Q.   So it was yellow in color?

17     A.   Parts of it were yellow stripes or whatever, I

18 guess.

19     Q.   So it was clear to you, though, that it was not a

20 firearm?

21     A.   It wasn't a firearm.  I've never seen a firearm with

22 yellow on it before.  And when I say I haven't seen a firearm,

23 it would be on TV.  I don't think I've ever seen a real

24 firearm, to be honest.

25     Q.   Your impression, though, was that they were

| 1 | tasers? |
| 2 | A. Yes. |
| 3 | Q. Okay. And all of the officers -- the male officers |
| 4 | had these yellow tasers out, but the female officer, did she |
| 5 | have anything in her hand that you saw? |
| 6 | A. I don't recall her with anything in her hand. |
| 7 | Q. And did any of the officers have anything else in |
| 8 | their hands other than these yellow tasers? |
| 9 | MR. MCCOY: Objection. Speculative. |
| 10 | THE WITNESS: I don't recall them with anything |
| 11 | other than that. |
| 12 | BY MR. PRAET: |
| 13 | Q. Did you see any officers with batons out? |
| 14 | A. I don't recall anything other than seeing the |
| 15 | tasers. |
| 16 | Q. Were the officers -- what was their tone of voice? |
| 17 | Were they calm? Were they yelling? |
| 18 | A. Calm? |
| 19 | Q. They were calm? |
| 20 | A. No. I was just being facetious. |
| 21 | Q. Oh. I'm sorry. |
| 22 | A. Calm? No, they were not calm. |
| 23 | Q. Okay. How were they speaking? |
| 24 | A. Loudly, authoritatively. |
| 25 | Q. And do you recall anything that they were saying? |

75

1    A.    I recall one of them saying -- after we had fallen,

2    one of them told the other, "Don't shoot him. Don't shoot at

3    him yet. Make sure she's out of the way." I do remember that

4    statement.

5    Q.    "Don't shoot him, make sure she's out of the way"?

6    A.    "Don't shoot him yet. Make sure she's out of the

7    way" or "Get her out of the way," or something like that.

8    Q.    You didn't see any police officers with guns out,

9    just tasers, right?

10    A.    The ones that I saw, I saw they were tasers. I

11    didn't notice one with guns out.

12    Q.    Did any of the police officers make physical contact

13    with you after you fell?

14    A.    They got -- pulled me up and separated -- they

15    pulled me up, kept Michael on the ground and pulled me up and

16    took me to the front room.

17    Q.    Was that the female police officer?

18    A.    I don't think she pulled me up. I don't know which

19    one of them -- I don't remember who did.

20    Q.    Did the lady police officer help you out of the

21    immediate area where Michael was?

22    A.    Yes.

23    Q.    Okay. And did she walk with you some place?

24    A.    To the adjacent room.

25    Q.    You still didn't have your cane then, right?

76

```
1       A.   No.

2       Q.   Did the lady police officer help you keep your

3  balance?

4       A.   She must have.

5       Q.   Okay.

6            MR. MCCOY:  If you don't recall or remember, say

7  that.  Don't assume or guess.

8            THE WITNESS:  Okay.  I don't remember.

9  BY MR. PRAET:

10      Q.   When you walked with this lady police officer to the

11 next room, could you see what was happening with Michael?

12      A.   I only heard what was happening.

13      Q.   What did you hear?

14      A.   Taser shots.

15      Q.   Describe for me what it sounded like.

16           MR. MCCOY:  Objection.  It's vague.

17           THE WITNESS:  Buh, buh.

18 BY MR. PRAET:

19      Q.   Like a buzzing?

20      A.   Whatever taser guns sound like.

21      Q.   Well, I want to know from you, what did it sound

22 like?  Did you hear a --

23      A.   Electricity.

24      Q.   Okay.  So like a humming or buzzing of

25 electricity?
```

1       A.   Uh-huh.

2       Q.   All right.  You earlier testified that back in 1993

3  you visited Michael in the jail in connection with that

4  assault with a deadly weapon charge.  Would that have been the

5  jail on -- would that have been the Fresno County Jail?

6       A.   Yes.

7       Q.   Would that have been the sixth-story facility on

8  Fresno and M Streets?

9       A.   As far as I can recall, it was the older jail.

10      Q.   All right.  And when you visited him there in 1993,

11  you saw that there were correctional officers present employed

12  by The County of Fresno, correct?

13           MR. MCCOY:  Objection.  Compound question.

14  Speculative.

15  BY MR. JOHNSON:

16      Q.   Did you see any correctional officers when you --

17      A.   I don't recall.  I wasn't paying attention.

18      Q.   Living in this community as a long-time member,

19  you've seen sheriff deputies and you've seen Fresno City

20  Police Department officers, correct?

21           MR. MCCOY:  Objection.  Compound and it lacks

22  foundation.

23           MR. PRAET:  It doesn't mean you can't answer.

24           THE WITNESS:  Yes, I've seen them.

25

1  BY MR. JOHNSON:

2     Q.  And you're aware that Fresno County sheriff deputies

3  are clad in light brown uniforms, correct?

4     A.  Yes.

5     Q.  Did any of the four to five people that you saw

6  outside your door when you first opened it up on the morning

7  in question, were they wearing any uniform bearing a color

8  even remotely resembling what you know to be Fresno County

9  sheriff deputies?

10     A.  I don't recall.  There was a lot of people at my

11  house that night.  A lot of people going in and out, a lot of

12  people going through my house.

13     Q.  Okay.  And that's fine, ma'am.  But if you can focus

14  on when you first opened the door.  You saw four to five

15  people, one woman, the rest men.  Keeping those in mind, were

16  any of them wearing the light brown uniform you associate with

17  employment at the Fresno County Sheriff's Department?

18     A.  I don't recall that, no.

19     Q.  You don't recall that any of the four to five were

20  wearing light brown --

21     MR. MCCOY:  Counsel.  She said she doesn't recall

22  the colors of the uniforms of the people who were at her door.

23  That's what she's saying.  She said that for --

24     MR. PRAET:  What's your objection, Waukeen?

25     MR. MCCOY:  Objection is you're harassing my client.

1   was anybody on your property, besides you, employed by

2   The County of Fresno?

3       A.   I don't know. Like I said, there was a lot of

4   people there. I don't know who they were.

5       Q.   Okay. And in response to questions from the other

6   attorneys here, you expressed some familiarity with the

7   appearance of the tasers, at least those carried by the city

8   police officers, yellow stripe on an object. Have you ever

9   seen a Fresno County sheriff's deputy carry such an object?

10      A.   Have I ever seen them? No, I can't say that I

11   have.

12      Q.   And your Oslin Street address, is that within the

13   limits of The City of Fresno?

14      A.   Yes. As far as I know, yes.

15      Q.   Well, let me clarify. Even within the greater

16   Fresno area, there are county islands. Do you understand

17   that?

18      A.   Yes.

19      Q.   For instance, Fig Garden. Is your house within a

20   county island?

21      A.   No.

22      Q.   And pardon me for your already responding to this,

23   but how long had you been there at the Oslin address as of

24   August 2004?

25      A.   We moved in March of 1997.

## PROOF OF SERVICE

### *SANDERS v. CITY OF FRESNO et al.*
**United States District Court 1:05 CV 00469 AWI SMS**

I, URSULA BUFE, declare as follows:

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed at the Fresno County Counsel's Office, 2220 Tulare Street, Fifth Floor, Fresno, California, 93721.

On December 12, 2007, I served a copy(ies) of the within documents

**Declaration of Bruce B. Johnson in Support of County of Fresno's Motion for Summary Judgment or Summary Adjudication**

on the interested party(ies) in said action addressed as follows:

| | |
|---|---|
| **WAUKEEN Q. McCOY**<br>**LAW OFFICES OF WAUKEEN Q. McCOY**<br>**703 MARKET STREET, SUITE 1407**<br>**SAN FRANCISCO CA 94103** | Counsel for Plaintiffs<br><br><br>**Via electronic filing** |
| **BRUCE D. PRAET, ESQ.**<br>**FERGUSON PRAET & SHERMAN**<br>**1631 E 18TH ST**<br>**SANTA ANA, CA 92705** | Counsel for City of Fresno<br>and Jerry Dyer<br><br>**Via electronic filing** |
| **MILDRED K. O'LINN**<br>**MANNING & MARDER, KASS,**<br>**ELLROD, RAMIREZ**<br>**14TH FLOOR**<br>**801 S. FIGUEROA STREET**<br>**LOS ANGELES, CA 90017** | Counsel for Taser International, Inc.<br><br>**Via electronic filing** |

☐     by placing the document(s) listed above for mailing in the United States mail at Fresno, California, in accordance with my employer's ordinary practice for collection and processing of mail, and addressed as set forth above.

☐     by transmitting via facsimile the above listed document(s) to the fax number(s) set forth above on this date before 5:00 p.m. pacific standard time.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth above.

☒     via electronic filing. The above party/ies is/are registered with the United States District Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

☐      by placing the document(s) listed above in a sealed envelope, and placing the same for overnight delivery by California Overnight at Fresno, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 12, 2007, at Fresno, California.

URSULA BUFE